JT 1334

COPYRIGHT 1930 BY
DWIGHT & W. H. JACKSON
CHICAGO
PATENT PENDING

SEE LEGEND ON REVERSE

SHARES 1,000

NUMBER 1

ORGANIZED UNDER THE LAWS OF THE STATE OF ILLINOIS

PREFERRED OPEN MRI, LTD.

**This Certifies That** Maher Rustom *is the owner of* _____ *full paid and non-assessable* COMMON SHARES WITHOUT PAR VALUE OF PREFERRED OPEN MRI, LTD. *transferable on the books of the Corporation in person or by duly authorized attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof the said Corporation has caused this Certificate to be signed by its duly authorized officers and sealed with the Seal of the Corporation,*

this 22nd day of APRIL A.D. 2002

Naser Rustom, M.D., SECRETARY

Naser Rustom, M.D., PRESIDENT

EXHIBIT D

© DWIGHT & M. H. JACKSON
CORPORATION SUPPLY CO
205 W. RANDOLPH ST.
CHICAGO, ILLINOIS 60606

( RESERVE THIS SPACE TO PASTE BACK CANCELLED STOCK CERTIFICATE )

*Certificate No.* 1 *For* 1,000 *Shares*

*Dated* April 22, XX 2002

*Issued to* Maher Rustom

*Received this Certificate* _____ 19____

*Surrendered this Certificate* _____ 19____

IF NOT AN ORIGINAL ISSUE SHOW DETAILS OF TRANSFER BELOW

| *Transferred from* | *Original Certificate* | | *No. of Orig. Shares* | *No. of Shrs Transf'd* |
|---|---|---|---|---|
| | *No.* | *Date* | | |
| Original Issue | | | | |
| | | | | |
| | | | | |
| | | | | |

IF THIS CERTIFICATE IS SURRENDERED FOR TRANSFER SHOW DETAILS

| *New Certificate Issued to* | *No. of New Certificate* | *No. of Shares Transferred* |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

# EMPLOYMENT AGREEMENT

This Agreement ("**Agreement**") is made as of this 22nd day of April, 2002 (the "**Effective Date**") by and between **PREFERRED OPEN MRI, LTD.**, an Illinois corporation (the "**Company**"), and **NASER RUSTOM, M.D.**, an individual ("**Executive**"). The Company along with Executive are sometimes hereinafter referred to collectively as "**Parties**" and individually as "**Party**." **MAHER RUSTOM** is also executing this Agreement solely for the purpose of Section 9.

WHEREAS, the Company is in the business of owning an open magnetic resonance imaging machine ("**Open MRI**") and providing diagnostic services with such Open MRI;

WHEREAS, Executive possesses considerable experience and knowledge of the business which is operated by and through the Company;

WHEREAS, the Company recognizes that Executive will make substantial contributions in a leadership capacity for the Company;

WHEREAS, Maher Rustom is the sole owner of the Company;

WHEREAS, as an inducement to Executive to enter into the employment of the Company, Maher Rustom has agreed to grant an irrevocable proxy to Executive and vote all of his shares of the Company's stock, and has also agreed to provide Executive with an option to purchase all of his stock in the Company;

WHEREAS, Executive is willing to enter into employment with the Company.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements of the Parties set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

1. **Recitals.** The recitals contained herein are specifically remade, restated and fully incorporated into the terms and conditions of this Agreement.

2. **Term of Employment.** The Company hereby agrees to employ Executive and Executive hereby agrees to continue to be employed by the Company in accordance with the terms and conditions set forth herein, for a period (the "**Term of Employment**") of _Ten_ (10) years commencing as of the Effective Date of this Agreement and ending on _April 21, 2012_ (the "**Expiration Date**") subject to the termination provisions set forth in Paragraph 6 hereof. THIS AGREEMENT SHALL BE RENEWED THEREAFTER FOR SUCCESSIVE ONE YEAR PERIODS UNLESS EITHER PARTY PROVIDES NOTICE TO THE OTHER OF TERMINATION

1

OF THIS AGREEMENT NOT LESS THAN 30 DAYS NOR MORE THAN 60 DAYS PRIOR TO THE EXPIRATION OF THE ORIGINAL TERM OR ANY ONE YEAR EXTENSION THEREOF.

3. **Positions, Duties and Responsibilities**.

    3.1 **Positions.** During the Term of Employment, Executive shall serve as an officer under the title of President and Chief Executive Officer and shall report directly to the Board of Directors of the Company.

    3.2 **Duties.** During the Term of Employment, Executive shall supervise and coordinate the use of the Open MRI, and have such other duties as are accorded to Chief Executive Officers of corporations engaged in the same business as the Company.

    3.3 **Executive Covenants.** The Executive covenants, warrants and represents that during the Term of Employment, he shall:

        (a) Exercise the highest standards of conduct in the performance of his duties; and

        (b) Not knowingly take any action which harms, in any way, the business or reputation of the Company.

    3.4 **Company Responsibility.** The Company covenants, warrants and represents that during the Term of Employment, it shall provide appropriate office accommodations and staff for use by Executive to carry out the business, operations and duties defined herein.

4. **Compensation.** As remuneration for all services to be rendered by Executive during the Term of Employment, and as consideration for agreeing to the terms of this Agreement, the Company shall pay and provide to Executive the following:

    4.1 **Base Salary.** For all services rendered by Executive under this Agreement, the Company will pay the Executive an annual base salary (the "**Base Salary**") of _250,000 Thousand_ Dollars ($_250,000_). The Base Salary identified herein shall be paid to the Executive in substantially equal installments throughout the year, consistent with the normal payroll practices of the Company. The Base Salary payable hereunder may be increased from time to time upon the mutual agreement of the Parties.

    4.2 **Employee Benefits.** Executive shall be entitled to participate in all employee benefit plans maintained by the Company for the benefit of its employees.

2

5. **Expenses**. During the Term of Employment, the Company shall pay or reimburse Executive for ordinary and necessary expenses in a reasonable amount which Executive incurs in performing his duties under this Agreement provided that Executive provides to the Company reasonable supporting documentation.

6. **Employment Terminations**.

    6.1 **Termination Due to Death.** In the event of the death of Executive prior to the Expiration Date, Executive's employment hereunder shall be terminated provided that the Company shall, until the end of the calendar year in which Executive dies, continue to pay to the beneficiary as so designated by Executive during his lifetime, or to Executive's estate, as appropriate, the full Base Salary, consistent with the Company's normal payroll practices, as if Executive had continued employment until the end of such year.

    6.2 **Voluntary Termination by Executive.** Executive may terminate his employment at any time by giving the Board of Directors written notice of intent to terminate, delivered at least thirty (30) calendar days prior to the effective date of such termination. The termination automatically shall become effective upon the expiration of the thirty (30) day notice period. The Company shall, until the effective date of such termination, continue to pay to Executive his full Base Salary, consistent with the Company's normal payroll practices. In such an event and except as provided above or in Paragraph 6.5 below, the Company and Executive thereafter shall have no further obligations under this Agreement.

    6.3 **Termination for Cause.** The Company may terminate Executive's employment under this Agreement upon thirty (30) days written notices for "Cause" upon written notice to Executive. Notwithstanding such termination, the Company shall, until the date of termination of employment, continue to pay to Executive his full Base Salary, consistent with the Company's normal payroll practices. For purposes of this Agreement, "Cause" shall mean the occurrence of any one or more of the following:

    (a) Executive is convicted of or pleads guilty to any felony or any act of fraud or embezzlement, which felony or act materially impacted the Company; or

    (b) The Executive intentionally engages in conduct or activities involving moral turpitude and such conduct or activities are materially damaging to the property, business or reputation of the Company.

In such an event and except as provided above or in Paragraph 6.5 below, the Company and Executive thereafter shall have no further obligations under this Agreement.

    6.4 **Termination by Executive for Good Reason.** Executive may terminate his employment hereunder for good reason without prejudice to the compensation rights

3

provided in Paragraph 4 hereof which shall continue in full force and effect until the Expiration Date if the Company breaches any of its obligations herein and such breach continues uncured for a period of thirty (30) days after written notice of such breach is given to the Company. Notwithstanding such termination, the Company shall, until the Expiration Date, continue to pay or provide to Executive (i) his full Base Salary, consistent with the Company's normal payroll practices and (ii) all other benefits provided under Paragraph 4.2 hereof (or pay Executive the amount the Company would have had to pay if Executive was then employed) as if Executive had continued employment until the Expiration Date. In such an event and except as provided above or in Paragraph 6.5 below, the Company and Executive thereafter shall have no further obligations under this Agreement.

    6.5    **Effect of Termination.** In addition to the rights, benefits and obligations specified in this Agreement which are to continue following termination of Executive's employment with the Company, upon termination of Executive's employment with the Company for any reason, (i) Executive shall be entitled to all payments and benefits for all periods prior to such termination, (ii) all claims for breach of contract with respect to actions occurring prior to termination shall survive, and (iii) the respective rights, obligations, representations, warranties and covenants of the Parties pursuant to Paragraphs 7 and 8 hereof shall survive such termination.

7.    **Restrictive Covenants.**

    7.1    **Confidential Information.** Executive agrees that, during his employment with the Company and at all times thereafter, he will not, without the prior written consent of the Company, directly or indirectly communicate or divulge to, or use for his own benefit or for the benefit of any other person or entity, any Confidential Information, as defined herein, which was communicated to or otherwise learned of or acquired by Executive during the course of his employment with the Company (whether prior to the date hereof or in the future); provided, however, that Executive may disclose or use any such information under any of the following circumstances:

    (i)    disclosure or use thereof in good faith by Executive in connection with the performance of Executive's duties in the course of Executive's employment with the Company in accordance with the Company's policies;

    (ii)    disclosure is required in compliance with law or in connection with any legal or regulatory action or process, provided that Executive shall first notify the Company in writing of the intended disclosure of such information and comply with such reasonable requests as the Company may make to assure that the disclosure of such information is limited to the extent reasonably necessary to accommodate Executive's proper purposes for such disclosure; and

4

(iii) disclosure or use by Executive of any such Confidential Information which becomes part of the public domain through no fault of Executive or any agent or representative of the Executive.

Confidential Information, as used herein, shall mean trade secrets, proprietary data and other confidential information with respect to the Company, its clients and competitors including, but not limited to, the following information: the Company's existing and contemplated services, business and financial methods and practices, plans, fees, marketing techniques, and lists of its existing and prospective clients.

7.2 **Comments Concerning the Company.** Executive agrees that during and subsequent to his employment with the Company, he will not, directly or indirectly, make or cause any other person to make, or assist any other person or entity in making, any oral or written statement containing any comments which could be reasonably considered to be disparaging regarding the Company, any then former or existing directors, officers, shareholders, employees, or clients of the Company except (i) any such statement made to an employee, director or officer of the Company which is necessary in connection with the performance of Executive's duties as an employee of the Company, and (ii) any such statement made in connection with any legal or arbitration proceeding.

7.3 **Acknowledgment.** Executive acknowledges and agrees that the restrictions set forth in this Agreement are reasonable and necessary for the protection of the Company's business and goodwill, and that the Company will suffer irreparable injury if he engages in the conduct prohibited thereby. Executive represents that the observance of the covenants referred to herein will not cause him any undue hardship nor will it unreasonably interfere with his abilities to earn a livelihood.

7.4 **Remedies.** Executive agrees that if he breaches or attempts to breach any of his obligations under this Agreement, the Company, in addition to any other remedies available to it under law, may obtain injunctive relief against Executive to prevent such continued or attempted breach and may recover any damages incurred as a result of any such continued or threatened breach and the Company's enforcement of its rights hereunder. The covenants contained herein are independent of any other agreements between Executive and the Company or obligations owed by one party to the other. The existence of any claim or cause of action by Executive against the Company shall not constitute a defense to the enforcement by the Company of any of the covenants contained herein. Executive agrees that the term of the restrictions contained herein shall be extended for a period equal to the period in which he is in breach thereof.

8. **Miscellaneous.**

8.1 **Notice.** Any notices, requests, demands or other communications provided for by this Agreement shall be sufficient if in writing and if sent by registered or certified

5

mail to Executive at the last known address he has filed in writing with the Company or, in the case of the Company, at its principal office.

8.2 **Entire Agreement**. This Agreement supersedes any prior agreements or understandings, oral or written, between the Parties hereto with respect to the subject matter hereof and contains the entire understanding of the Company and Executive with respect to the subject matter hereof.

8.3 **Modification**. This Agreement shall not be varied, altered, modified, canceled, changed or in any way amended except by mutual agreement of the Parties in a written instrument executed by the Parties hereto or their legal representatives.

8.4 **Severability of Provisions**. If any provision of this Agreement be deemed to be invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall not be deemed to affect or impair the validity of enforceability of any other provision of this Agreement, and each and every paragraph and provision of this Agreement is hereby declared to be separable from each and every other paragraph and provision hereof, and to constitute separate and distinct covenants. In the event a court of competent jurisdiction would otherwise hold any of the restrictive covenants herein unenforceable by reason of their geographic or business scope or duration, any such covenants shall be construed as if their geographic or business scope or duration had been more narrowly drafted so as to provide the maximum and enforceable protection to the Company.

8.5 **Governing Law**. This Agreement shall be construed and governed in accordance with the laws of the State of Illinois (exclusive of the conflict of law provisions thereof).

8.6 **Enforcement**. Should any legal proceedings be commenced to secure or enforce any right under this Agreement, the prevailing party, shall be entitled to recover from the other party its or his reasonable attorneys' fees and costs in addition to all other relief to which said party may be entitled. The term "**prevailing party**" shall mean that party whose position is substantially upheld in a final judgment rendered in such litigation or, if the final judgment is appealed, that party whose position is substantially upheld by the decision of the final appellate body to consider the appeal.

8.7 **Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8.8 **Waiver**. A waiver of one of the provisions of this Agreement shall not affect any of the other provisions of this Agreement, such that the remaining provisions will remain in full force and effect. The failure of any party to enforce any of the provisions of this Agreement shall not be deemed a waiver thereof. No provisions of this Agreement shall be deemed to have been waived unless such waiver shall be in writing and signed by the

6

waiving party. A waiver in writing at any time of any of the terms and conditions of this Agreement shall not be considered a modification, cancellation or waiver of such terms or conditions as to subsequent events unless otherwise expressly provided.

8.9   **Assignment.** The terms of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns; provided, however, that the duties of Executive are personal to him and may not be assigned by him.

8.10   **Paragraph Headings and Pronouns.** The headings in this Agreement are inserted for convenience and identification only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identification of the Parties may require.

8.11   **Consent to Jurisdiction and Venue.**   Each of the Company and Executive hereby irrevocably submits to the jurisdiction of any United States District Court sitting in Chicago, Illinois or any state court sitting in Cook County, Illinois in any action or proceeding arising out of or relating to this Agreement, and the Company and Executive hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in any such court. The Company and Executive waives any venue objection he or it may have to any such action or proceeding arising out of or relating to this Agreement in any such court and any objection on the grounds that any such action or proceeding in any such court has been brought in an inconvenient forum. Nothing herein shall affect the right of a Party to bring any action or proceeding against the other Party in the courts of any other jurisdiction.

9.   **Benefits Provided by Nason Rustom.**

9.1   **Appointment of Executive as Irrevocable Proxy.** Maher Rustom is contemporaneously herewith appointing Executive as his irrevocable proxy to vote all of his shares of stock in the Company as an inducement for Executive to enter into this Agreement. The proxy shall remain irrevocable for as long as Executive remains employed by the Company.

9.2   **Grant of Option.** Maher Rustom is also contemporaneously herewith granting an option to Employee to acquire all of his shares of stock in the Company.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement, as of the day and year first written above.

**PREFERRED OPEN MRI, LTD.**

By: _____
    President

_____
Naser Rustom, M.D.

Solely for the purpose of Section 9
of this Agreement

_____
Maher Rustom

716574v2



CORP/LLC - File Detail Report     3/5/18, 10:50 PM

# OFFICE OF THE ILLINOIS SECRETARY OF STATE
## JESSE WHITE — SECRETARY OF STATE

### CORPORATION FILE DETAIL REPORT

| Field | Value | Field | Value |
|---|---|---|---|
| File Number | 62168072 | | |
| Entity Name | PREFERRED OPEN MRI, LTD | | |
| Status | ACTIVE | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 04/18/2002 | State | ILLINOIS |
| Agent Name | NORMAN P JEDDELOH | Agent Change Date | 10/17/2017 |
| Agent Street Address | 161 N CLARK ST-STE 4200 | President Name & Address | NASER RUSTOM, M.D. 4941 N KEDZIE CHICAGO, IL 60625 |
| Agent City | CHICAGO | Secretary Name & Address | SAME |
| Agent Zip | 60601 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2018 |
| Assumed Name | INACTIVE - PREFERRED GLOBAL MEDICAL EQUIPMENT | | |

Return to the Search Screen     Purchase Certificate of Good Standing

(One Certificate per Transaction)

## OTHER SERVICES

File Annual Report

Adopting Assumed Name

Articles of Amendment Effecting A Name Change

# CORPORATE RESOLUTION

## ACTION BY THE SHAREHOLDERS
## OF
## PREFERRED OPEN MRI, LTD.

At a special meeting called on March 1, 2018, by the Shareholders, which is Mahar Rustom, M.D. who owns 100% of all shares, pursuant to the Illinois Business Corporate Act of 1983, 805 ILCS 5/7.05, the Shareholders vote to immediately remove Naser Rustom, M.D. from his positions as, President, Secretary and Treasurer of Preferred Open MRI, Ltd.

The Shareholders vote to appoint Maurice James Salem as the President, Secretary and Treasurer of Preferred Open MRI, Ltd.

The Shareholders vote to terminate Naser Rustom as an employee-at-will of, Preferred Open MRI, Ltd., which commenced after the initial Employment Agreement terminated on April 21, 2012, and that no assets, income or revenue, in any bank accounts, are to be removed and no salary to be paid to Naser Rustom without the authorization of Maurice James Salem.

The Shareholders vote to rescind all signors on all bank accounts and assign Maurice James Salem as the sole signor on all bank account belonging to Preferred Open MRI Ltd.

The Shareholders also vote for an accounting to be conducted over all business records, assets, income and bank accounts of the business since April 22, 2002.

**In Witness Whereof**, the Shareholder Maher Rustom, M.D., who owns 100% of shares, has executed this Corporate Resolution on the 1th Day of March, 2018.

By: _____
Maher Rustom, M.D.,
Owner of 100% of Shares of Preferred Open MRI Ltd.,

By: _____
M. James Salem, President,
Preferred Open MRI Ltd.,