# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAHER RUSTOM,<br>　　　　　　　　　　　　Plaintiff,<br>　　v.<br>NASER RUSTOM, and the NORTH STAR<br>TRUST COMPANY, an Illinois<br>Corporation (Trust Number 01-3775),<br>　　　　　　　　　　　　Defendants. | Case No. 1:17-cv-09061<br><br>Judge: Marvin E. Aspen<br><br>Magistrate Judge: Jeffrey Cole |

## VERIFIED SECOND AMENDED COMPLAINT

The Plaintiff, Dr. Maher Rustom, by and through his attorney M. James Salem of the Salem Law Offices, seek to quiet title to a commercial real property on the basis that the ownership was fraudulently transferred, and an accounting of the property's income and expense, as well as an accounting of the companies Galilee Medical Center, S.C., and Preferred Open MRI Inc., and states the following:

## NATURE OF THE ACTION

1.　This is a dispute between two brothers, the older brother, Plaintiff Dr. Maher Rustom, ("Maher") who is and has always been a subject (or citizen) of the country Saudi Arabia, was educated outside the United States and does not speak or write English well, in that he will need a translator to give testimony. The younger brother, Defendant Dr. Naser Rustom ("Naser") came to the United States in 1984, was educated in this country and became a citizen in the late 1980's. He speaks and writes English fluently and has become adapted to the culture and the norms of this country.

2.　On September 26, 1995, Maher purchased a commercial building that produces income from ten (10) tenants. See **Exhibit A**. After Maher purchased the building

1

he entered into an agreement with his brother, Defendant Naser Rustom ("Naser"), to manage the building and use the rent to pay the mortgage and other expenses. The reason Maher purchased the building, *inter alia*, was that in 1994, Maher and Naser, together with their now deceased brother Amer Rostom ("Amer"), created the company Galilee Medical Center, S.C. ("the Medical Center"), where Amer and Maher each have one-third (1/3) ownership interest and where the Medical center will be a tenant in Maher's building, rent-free. The rent-free arrangement in Maher's building was his investment in the Medical Center, in exchange for one-third ownership in the company. Amer died in 2011, and about eight years earlier Maher, with his brother Amer, saw a document labeled "trust" where the beneficiaries of the Medical Center were all three brothers, with one-third interest each.

3. Maher, from time-to-time, travels back-and-forth from Saudi Arabia to the U.S. and on one trip, in 1999, he signed a one paged document that he believed would permit Naser to manage the building and act on his behalf as the owner, see the first page of **Exhibit B**. The notarized signature on the third page, entitled Statement by Grantor and Grantee, of **Exhibit B** is not his; it is a forgery. Maher never intended to transfer to Naser the ownership of the subject property via the Quit Claim Deed, shown hereto as **Exhibit B**. Moreover, the notary on the second page that supposedly notarizes the signature on the first page, is a different person than the notary on the third page. However, both the second and third pages were notarized by different notaries, and supposedly they were notarized on the same day: October 29, 1999. Maher never gave Naser authorization to transfer the property to his name and never signed a power of attorney to Naser.

Maher never needed to give a power of attorney because he initially purchased the subject building in his own name, without the use of a power of attorney.

4. No consideration was transferred, notwithstanding the statement on page one of the Quit Claim Deed that ten dollars was paid, which is a rebuttable presumption. Since 1995 to August 2017, both Maher and Naser publicly admitted, before family, relatives and friends, that Maher was the owner of the subject building. The current fair market value of the property is $425,000 and it was recently listed for sale for this amount. Maher seeks to quiet title to establish his ownership of the building in his name and void the Quit Claim Deed shown as **Exhibit B**. Maher also seeks an accounting of the subject building's rent income and expenses, as well as an accounting of the Medical Center from Defendant Naser.

5. Maher also seeks an accounting of Preferred Open MRI Ltd., which is a company that he owns 100% of the Shares, and Naser was the President, Secretary and Treasurer, until March 1, 2018, see attached corporate resolution, **Exhibit D,** last page. By a corporate resolution Naser was removed as an officer by Maher. Naser employment terminated in 2012, and since then he has been an at-will-employee and the corporate resolution terminates his at-will employment. **Exhibit D** is the Articles of incorporation, showing Maher owns 100% of the Shares, the employment agreement with Naser and the corporate resolution removing Naser from the company.

## **JURISDICTION AND VENUE**

6. Jurisdiction exists in this Court by reason of complete diversity of citizenship, 28 U.S.C. § 1332. Plaintiff Maher Rustom is *domiciled* in and is a citizen of the country Saudi Arabia and he is the only Plaintiff. The Defendant is *domiciled* in Cook

County, Illinois. Defendant North Star Trust Company is an Illinois Corporation. Thus, there is complete diversity jurisdiction. The amount in controversy exceeds $75,000, exclusive of interests and costs. The amount in controversy is $425,000 in real property value and an additional amount from an accounting. Venue in Illinois is based on where the subject real property and assets are located.

## THE PARTIES

7. Plaintiff, Maher Rustom, is a doctor who resides in, and is employed in, Saudi Arabia and he is the owner of the subject assets and real property.

9. Defendant, Naser Rustom, is also a doctor and a citizen of Illinois in the United States and currently he is the named owner of the subject real property and has possession of the subject assets.

10. Defendant, NORTH STAR TRUST COMPANY, in an Illinois company that holds the subject real property in trust: Trust Number 01-3775..

## STATEMENT OF FACTS

11. The Plaintiff, Maher Rustom, ("Maher") is and has always been a subject (or citizen) of the country Saudi Arabia. Maher is a doctor educated in Syria and who is currently practicing medicine in Saudi Arabia.

12. Maher has a visa to the United States, which he uses to travel to this country, from time-to-time, where his mother and brother Naser reside.

13. In 1995, Maher personally purchased a commercial building located at 4941 North Kedzie, Chicago, Illinois, in his name and without the use of a power of attorney, which produces income from ten (10) tenants. **Exhibit A**.

14. After Maher purchased the building he entered into an agreement with his brother, Defendant Naser Rustom ("Naser"), to manage the building and use the rent to pay the mortgage and other expenses.

15. Also, in 1995, Maher, Amer Rostom his deceased brother, and Naser created the company Galilee Medical Center, S.C. ("the Medical Center"), where Maher has one-third (1/3) ownership interest and where it would be a tenant in Maher's building rent-free.

16. Amer died in 2011, and about eight years earlier Maher, with his brother Amer, saw a trust document where the beneficiaries of the Medical Center were all three brothers, with one-third interest each.

17. In the event Maher could not be part owner of the Medical Center, then this would constitute further fraud by Naser, where Maher relied on Naser's intentional false statements to give him one-third ownership and Maher was damaged by giving the Medical Center a rent-free facility to start its business.

18. In 1999, just before going back to Saudi Arabia, Maher signed a one-page document that he believed, according to Naser, would permit Naser to manage the building and act on his behalf, as the Landlord. This was an intentional false statement by Naser to Maher. This one-page document is the first page in **Exhibit B**. Maher never signed the third page of that document and the notarized signature on the third page is not Maher's.

19. Maher never spoke or wrote English well enough and completely depended and trusted his younger brother Naser with all the investments he made in the United States. Maher never had any intentions of transferring to Naser the ownership of

the subject property via the Quit Claim Deed, shown hereto as **Exhibit B**, recorded in the Cook County Recorder, on November 12, 1999, as document number 09063207.

20. Maher never signed the third page of the Quit Claim Deed before a notary. Although he signed the first page, he did so believing that it would permit Naser to act on his behalf as landlord to manage the building and he did NOT sign it before a notary.

21. The notary on the second page of **Exhibit B** who allegedly notarized Maher's signature on the first page, never did so in the presence of Maher, and this notary is a different person than the notary on the third page. However, both the second and third pages were notarized by different notaries, and supposedly they were notarized on the same day: October 29, 1999.

22. Maher never gave Naser authorization to transfer the property to his name and never signed a power of attorney to Naser. Maher never needed to give a power of attorney because he purchased the subject building in his own name, without the use of a power of attorney, **Exhibit A**.

23. From 1995 to 2017, both Maher and Naser acknowledged publicly before family, relatives and friends that Maher was the owner of the subject building.

24. Moreover, no consideration was ever transferred, notwithstanding the statement on page one of the Quit Claim Deed, **Exhibit B**, that ten dollars was paid. This is a rebuttable presumption.

25. In *August 2017, Maher* went to attorney, Vivian Khalaf, to check on his property and make sure that the property tax was being paid. Maher still receives the property tax bill in his name, see **Exhibit C**. Maher learned for the first time from Ms. Khalaf that the ownership of the building was transferred to Naser in 1999. *August 2017,*

was the date Maher first learned of the fraud perpetrated by Naser, and when the cause of action for fraud accrued.

26. The current fair market value of the property is $425,000 and it was recently listed for sale for this amount.

27. Naser transferred the ownership of the subject property into a trust held by Defendant North Star Trust Company, Trust Number -01-3775.

28. Maher seeks to quiet title in his name, to declare the Quit Claim Deed shown as **Exhibit B** as void, and to have an accounting of the income and expenses for the subject building and the Medical Center from 1995 to the present time, and an accounting from 2002 to the present for Preferred Open MRI Ltd.

### FIRST CAUSE OF ACTION
### QUIET TITLE CLAIM

29. Plaintiff repeats paragraphs 1 through 28 as stated herein.

30. Defendant Naser knowingly made a false statement to Plaintiff in having him sign the first page of the Quit Claim Deed, **Exhibit B**, but Maher never signed that first page in the presence of the notary shown on the second page.

31. Plaintiff relied on Defendant false statement and signed the first page of the Quit Claim Deed, believing that it only gave permission for Naser to manage the building. Maher never intended to transfer ownership to Naser.

32. Plaintiff is the owner of the property, **Exhibit A**, and the Quit Claim Deed, **Exhibit B**, is the cloud on the title, which Plaintiff seeks to remove.

33. As a result of Plaintiff's reliance on Defendant's false representation, he lost ownership to the real property shown in **Exhibit A**.

34. In August 2017, was when Plaintiff first learned of this fraud when meeting with Illinois attorney, Vivian Khalaf, to check on his property and make sure that the property tax was being paid. Maher still receives the property tax bill in his name, see **Exhibit C**. Maher learned for the first time from Ms. Khalaf that the ownership of the building was transferred to Naser in 1999. This was the date when the cause of action for fraud accrued.

35. **WHEREFORE,** Plaintiff prays for the following relief:

a) an order quieting title in Plaintiff's name and a judgment declaring the Quit Claim Deed shown as **Exhibit B** and the Trust Deed, as void;

b) together with such other and further relief this Court deems just and proper.

## SECOND CAUSE OF ACTION
## AN ACCOUNTING FOR RENT AND THE MEDICAL CENTER

36. Plaintiff repeats paragraphs 1 through 28 as stated herein.

37. Defendant Naser Rustom managed the income and expenses of the subject commercial building, as well as the tenant the Medical Center.

38. Given the 1999 false and fraudulent conduct of Defendant Naser, the income and expenses he reported for the building and the medical center are not truthful.

39. Even if Maher cannot be a part owner of a Medical Center in Illinois, then this would constitute further fraud by Naser and an accounting will still be needed.

40. There is no adequate remedy at law to determine the damages from the lost income that the business previously generated because it would be too difficult and too speculative.[1]

41. Thus, Plaintiff seeks an accounting from Naser for all income and expenses for the subject commercial building's rent income and the income for the Medical Center from 1999 to present.

42. **WHEREFORE,** Plaintiff prays for the following relief:

a) an order directing Naser to provide an accounting for the income and expenses for the subject building's rent, shown as **Exhibit A**, as well as the Medical Center from 1995 to present time;

b) an order directing Naser to turn over all income and assets found to belong to the subject building's Landlord and part owners of the Medical Center;

b) together with such other and further relief this Court deems just and proper.

## THIRD CAUSE OF ACTION
## AN ACCOUNTING FOR PREFERRED OPEN MRI LTD.

43. Plaintiff repeats paragraphs 1 through 28 as stated herein.

44. Defendant Naser Rustom managed the income and expenses of the company Preferred Open MRI Ltd., for Plaintiff Maher since 2002.

---

[1] Ordinarily, breaches of contract can be remedied by money damages. But after-the-fact damages are inadequate because it is the difficulty or too speculative to determine the lost business, which makes an injury irreparable without securing information through injunctive relief avoids this irreparable harm. *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 633 (7th Cir. 2005); *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006). Thus, an accounting is needed to avoid irreparable harm because there is no adequate remedy in law.

45. Given the 1999 false and fraudulent conduct of Defendant Naser, and Naser's recent 2018 allegation that he purchased the company in 2005, the income and expenses he reported to Maher for the Preferred Open MRI Ltd., are not truthful.

46. There is no adequate remedy at law to determine the damages from the lost income that the business previously generated because it would be too difficult and too speculative.[1]

47. Thus, Plaintiff seeks an accounting from Naser for all income and expenses for Preferred Open MRI Ltd., from 2002, to present time.

48. **WHEREFORE,** Plaintiff prays for the following relief:

a) an order directing Naser to provide an accounting for the income and expenses for Preferred Open MRI Ltd., from 2002 to present time;

b) an order directing Naser to turn over all income and assets found belong to the Preferred Open MRI Ltd.;

b) together with such other and further relief this Court deems just and proper.


### FOURTH CAUSE OF ACTION
### COMMON LAW FRAUD

49. Plaintiff repeats paragraphs 1 through 28 as stated herein.

50. Defendant knowingly made a false statement to Plaintiff in having him sign the first page of the Quit Claim Deed, **Exhibit B**, and stating that he can be one-third owner of the Medical Center.

51. Plaintiff relied on Defendant false representation and signed the first page of the Quit Claim Deed, believing that it only gave permission for Naser to manage the building, and that he was one-third owner of the medical center.

52. The third page of the Quit Claim Deed is false, in that, Plaintiff never signed the notarized signature shown on the third page of **Exhibit B**. Defendant forged Plaintiff's signature on the third page.

53. Plaintiff Maher was falsely lead to believe that he was a one-third owner of the Medical Center

54. In *August 2017,* Maher went to his attorney, Vivian Khalaf, to check on his property and make sure that the property tax was being paid. Maher learned for the first time from Ms. Khalaf that the ownership of the subject building was transferred to Naser in 1999. This was the date Maher first learned of the fraud perpetrated by Naser, at the August 2017 meeting with attorney Khalaf, which is when the cause of action for fraud accrued.

55. Maher allowed Naser to manage Preferred Open MRI Ltd., from which Naser wrongfully took income and assets not belonging to him.

55. As a result of Defendant forgery and Plaintiff's reliance on Defendant's false representation, he lost ownership to the real property shown in **Exhibit A**, and one-third of the profits from the Medical Center and all assets and profits from Preferred Open MRI Ltd.

56. **WHEREFORE,** Plaintiff respectfully requests the following relief:

a) an order quieting title in Plaintiff's name and voiding the Quit Claim Deed shown as **Exhibit B** and the Trust Deed;

b) an order awarding compensatory damages for lost assets and profits from the Medical Center and Preferred Open MRI Ltd., plus pain, suffering and mental anguish;

c) punitive damages in the amount that will deter the Defendant and others similarly situated from repeating such conduct;

d) an order granting attorney's fees for Plaintiff;

e) together with such other and further relief this Court deems just and proper.

**Jury Trial is Demanded**

Dated: May 9, 2018,

                                      Respectfully submitted,

                                      /s/M. James Salem,
                                      Salem Law Offices
                                      Attorney for Plaintiff
                                      7156 West 127th Street, B-149
                                      Palos Heights, IL. 60463
                                      Tel. (708) 277-4775
                                      salemlaw@comcast.net

**Verification**

Pursuant to 28 U.S.C. § 1746, I Dr. Maher Rustom, declare under the penalty of perjury that the foregoing statements in this Second Amended Complaint are true and complete, except those facts I believe them to be true based on second-hand information.

Executed on this 9th Day of May, 2018,

                                                          /s/Dr. Maher Rustom