IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAHER RUSTOM,<br><br>     Plaintiff,<br><br>v.<br><br>NASER RUSTOM, and the NORTH STAR TRUST COMPANY, Trust Number 01-3775,<br><br>     Defendants. | Case No. 1:17-cv-09061<br><br>Judge MARVIN E. ASPEN<br><br>Magistrate Judge JEFFREY COLE |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant Naser Rustom submits this Memorandum in Support of his Motion to Dismiss Second Amended Complaint pursuant to Rules 9(b), 12(b)(6), and 12(d) of the Federal Rules of Civil Procedure.

### INTRODUCTION

Plaintiff's Verified Second Amended Complaint ("Complaint" or "SAC") [Dkt. 61] is replete with allegations of demonstrably false facts, that, even if accepted as true, cannot establish the elements of the causes of action pleaded and do not establish any cognizable claims. Further, the Complaint, entirely based on allegations of fraud, fails to plead the elements of fraud with adequate specificity under either Illinois law or Federal Rule of Civil Procedure 9(b).

### THE COMPLAINT'S ALLEGATIONS

*The building at 4941 N. Kedzie, Chicago, Illinois*

In 1995, Maher Rustom bought a building located at 4941 N. Kedzie, Chicago, Illinois (the "property"). SAC, ¶¶ 2, 13, Ex. A. In 1999, Maher signed a one-page document—a quitclaim deed—transferring ownership of the property to Naser Rustom. Maher admits that his signature on the quitclaim deed is genuine; he also admits that the quitclaim deed was duly recorded with the Cook

County Recorder, that it transferred ownership of the property to Naser, and that Naser is "currently the named owner" of the property. *Id.*, ¶¶ 9, 18-19, Ex. B at 1. According to the Complaint, Naser "knowingly made a false statement to Plaintiff in having him sign the first page of the Quit Claim Deed," and Plaintiff "relied on Defendant['s] false statement and signed" the deed. *Id.*, ¶¶ 30-31. The Complaint does not specify what the "false statement" was. Maher "believed" that signing the deed "would permit Naser to manage the building." *Id.*, ¶¶ 18, 31. After acquiring ownership, "Naser transferred the ownership of the subject property into a trust held by Defendant North Star Trust Company, Trust Number 01-3775." *Id.*, ¶ 27.

Eighteen years later, in August 2017, Maher alleges that he went to his attorney "to check on his property and make sure that the property tax was being paid," and "learned for the first time … that the ownership of the building was transferred to Naser in 1999." *Id.*, ¶ 25.

*The Galilee Medical Center*

Maher alleges that in 1994, he and Naser, along with a now deceased brother, created the Galilee Medical Center (the "Medical Center"), with each having a one-third ownership interest. The Complaint alleges that the Medical Center would be a rent-free tenant at the property. Years later, Maher "saw a trust document where the beneficiaries of the Medical Center were all three brothers." *Id.*, ¶¶ 2, 15-16. The Complaint alleges that "Maher relied on Naser's intentional false statements to give him one-third ownership," but does not explain what the intentional false statements were. *Id.*, ¶ 17. Maher alleges that "[i]n the event Maher could not be part owner of the Medical Center, then this would constitute further fraud by Naser, where Maher relied on Naser's intentional false statements to give him one-third ownership." *Id.*

*Preferred Open MRI*

The Complaint alleges that Maher owns 100% of the shares of Preferred Open MRI ("Open MRI"), and that, pursuant to an employment agreement, Naser was the President, Secretary, and

2

Treasurer of Open MRI until March 1, 2018, when he was removed from office. *Id.*, ¶ 5, Ex. D. On March 13, 2018, Maher signed a corporate resolution appointing Basil Salem as President, Secretary, and Treasurer. *Id.*, ¶ 5, Ex. D at 12.

*Plaintiff's Claims*

In Count I, Maher seeks quiet title of the property, relying on Naser's "false statement" and Maher's admitted signing of the 1999 quitclaim deed. *Id.*, ¶¶ 29-35. Count II contains claims for accountings of the property and the Medical Center, which rely on unidentified "false and fraudulent conduct" from 1999. *Id.*, ¶¶ 36-42. Count III seeks an accounting of Open MRI from 2002 through the present based on "1999 false and fraudulent conduct … and Naser's recent 2018 allegation that he purchased the company in 2005." *Id.*, ¶¶ 43-48. Count IV is an action for common law fraud and mirrors the allegations of Counts I through III. *Id.*, ¶¶ 49-56.

**ARGUMENT**

Dismissal is proper under Rule 12(b)(6) if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide "allegations that raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted). A complaint must do more than merely allege the possibility of relief or facts consistent with a defendant's liability; it must state a plausible entitlement to relief. *Twombly,* 550 U.S. at 557. Where, as here, certain supplemental evidentiary material conclusively establishes that Plaintiff is wrong on the facts and is not entitled to any relief, the Court treats Defendant's motion as one for summary judgment as to those claims. Fed. R. Civ. P. 12(d). Where Plaintiff's claims are based on fraud, Rule 9(b) requires that they "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The Complaint's claims are based on Illinois law, and the Court applies the substantive law of Illinois. *Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 677 (7th Cir. 2008).

3

**I.  Count I fails to allege a viable claim for quiet title.**

The Complaint does not allege the facts necessary to support a claim for quiet title, because, as a matter of law, and as Maher acknowledges, he does not own the property in question.

An "action to quiet title in property is an equitable proceeding in which a party seeks to remove a cloud on his title to the property… A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce... Thus, a plaintiff cannot claim that there is a cloud on his title, unless he actually has title." *Gambino v. Boulevard Mortg. Corp.*, 398 Ill. App. 3d 21, 52, 922 N.E.2d 380, 410 (2009) (citations omitted). Here, the quitclaim deed executed by Maher in 1999 deprived him of title. As a result, Maher cannot assert a claim for quiet title. *Chicago Title Land Tr. Co. v. Iverson*, 2016 IL App (1st) 150986-U, ¶ 16, *appeal denied*, 50 N.E.3d 1138 (Ill. 2016) (affirming dismissal of quiet title claim, because in "order to remove a cloud from title, the plaintiff must demonstrate he actually has title, as well as possession of the property at the time the suit was filed" and plaintiff had neither); *Marlow v. Malone*, 315 Ill. App. 3d 807, 812, 734 N.E.2d 195, 200 (2000) (affirming dismissal of complaint with prejudice because, among other things, "where a plaintiff has no title in himself, he cannot maintain an action for quiet title"). Maher has pleaded himself out of court. *Tamayo*, 526 F.3d 1074, 1086 (recognizing "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims") (citation omitted).

Seemingly acknowledging that he has cannot bring an action for quiet title, Maher alleges that the quitclaim deed *itself* "is the cloud on the title, which Plaintiff seeks to remove." SAC, ¶ 32. That allegation fails as a matter of law. A facially valid and recorded deed—such as the one here—cannot be a cloud on title. *Trustees of Sch. v. Wilson*, 334 Ill. 347, 350, 166 N.E. 55, 56 (1929); *McCarty v. McCarty*, 275 Ill. 573, 578-79, 114 N.E. 322, 324 (1916); *R.E. Pratt & Co. v. Ashmore*, 127 Ill. App. 331, 332 (Ill. App. Ct. 1906). Rather, a "cloud on title is an outstanding claim or

4

encumbrance, *which, if valid, would affect or impair the title of the owner.*" *Hill v. 1550 Hinman Ave. Bldg. Corp.*, 282 Ill. App. 109, 117 (Ill. App. Ct. 1935), *aff'd*, 365 Ill. 129, 6 N.E.2d 128 (1936) (emphasis in original). Clouds on title must be instruments, other than the deed, that "*cast doubt upon the validity of the record title.*" *Id.* at 118 (emphasis in original); *see Stahelin v. Forest Pres. Dist. of Du Page Cnty.*, 376 Ill. App. 3d 765, 779, 877 N.E.2d 1121, 1135 (2007). The Complaint, however, makes no mention of any other legal instrument that calls into question the validity of the quitclaim deed.

Because of these fatal defects to a claim for quiet title, Count I should be dismissed with prejudice.[1]

**II.     Count II fails to state claims for accountings, because it does not adequately plead a right to that equitable remedy, and, in any event, Plaintiff is not a beneficial owner of the trust which owns the property and is not a shareholder of the Medical Center.**

In Count II, Plaintiff seeks accountings for the income from 1999 to the present for both the property as well as for the Medical Center. The Complaint alleges there "is no adequate remedy at law to determine the damages from the lost income that the business previously generated because it would be too difficult and too speculative." SAC, ¶ 40. The "business" in this allegation is not identified, and there is no explanation why calculation of damages would be difficult or speculative. To the contrary, business profits and expenses could be easily ascertained, and, for the property itself, the market value is $425,000. SAC, ¶ 4. *See Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (affirming denial of accounting claim where "damages in this case

---

[1] Maher alleges that his signature on the Grantor/Grantee Statement is a forgery. SAC, ¶ 3, Ex. B at 3. Even if true, it does not matter. The Grantor/Grantee Statement is not the quitclaim deed and forms no part of the conveyance of title. It is the quitclaim deed itself, as to which there is no dispute about Maher's genuine signature, that conveyed the property from Maher to Naser in 1999. SAC, Ex. B at 1. That page (the deed itself) is the legally operative document. The Grantor/Grantee Statement simply accompanies the conveyance document for purposes of recording only and can be signed by the grantor or an agent. 55 ILCS 5/3-5020(b)(1). *See* SAC, Ex. B at 3 ("Attach to *deed* … to be recorded in Cook County, Illinois") (emphasis added).

5

are not speculative, and the amount of damages is neither difficult nor impossible to measure") (citation omitted). The allegation that "there is no adequate remedy at law" is an impermissible conclusion without any factual support. *Twombly*, 550 U.S. at 555 ("plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citation omitted).

    A.  **Plaintiff is not entitled to an accounting of the property.**

Maher cannot maintain an action for an accounting of the property for the same reasons that make Count I deficient. As the Complaint alleges, Maher does not own the property and has not owned it since 1999. There is no legal basis upon which to order Naser to provide Maher with an accounting of property that Maher does not own and for income or expenses that do not concern him. Maher has no standing to ask for this relief. *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1028, 929 N.E.2d 1167, 1187 (2010) ("The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing a lawsuit."); *see also Scachitti v. UBS Fin. Servs.*, 215 Ill.2d 484, 493, 831 N.E.2d 544, 549 (2005). The Complaint also fails to allege that Maher is a beneficiary of the trust held by the North Star Trust Company. *Cf. Corsi v. Corsi*, 302 Ill. App. 3d 519, 525, 706 N.E.2d 956, 961 (1998) ("plaintiffs, *as beneficiaries*, have a right to [an accounting] as is reasonably necessary to enable them to enforce their rights under the trust or to prevent or redress a breach of the trust.") (emphasis added).

Without any legally cognizable interest in the property or the trust that holds the property, Maher cannot sue for an accounting.

    B.  **Plaintiff is not and cannot be an owner of the Medical Center by operation of law, and, as a result, is not entitled to an accounting.**

Maher alleges that he and Naser, along with another brother, created the Medical Center in 1994, and that Maher has a one-third ownership interest in the business. These allegations are

demonstrably false. Maher has never been an owner of the Medical Center, and the Medical Center's records prove it. Defendant's Exhibit ("Def. Ex.") A, ¶¶ 3-8, Exs. A:1-3.[2]

Significantly too, the Medical Center is a medical services corporation, and, by operation of Illinois law, Maher is legally prohibited from owning any part of it. Def. Ex. A:1. The purpose of the Medical Center is to "own, operate and maintain an establishment for the study, diagnosis and treatment of human ailments and injuries, … provided that medical or surgical treatment … will be given by employees of the corporation only if they are licensed pursuant to the Medical Practice Act." *Id.* Under Illinois law, all "of the officers, directors and shareholders of a corporation subject to this [Medical Corporation Act] shall at all times be persons licensed pursuant to the Medical Practice Act of 1987. No person who is not so licensed shall have any part in the ownership, management, or control of such corporation." 805 ILCS 15/13(a). The Medical Practice Act of 1987 requires physicians to have a valid, active license in Illinois to practice medicine. 225 ILCS 60/3. Maher has never been licensed as a physician in Illinois and is not now licensed as a physician in Illinois. Def. Exs. B:4-5.[3] The Complaint does not allege otherwise. Therefore, even if Maher believes he is a one-third owner of the medical practice, his claim for an accounting of the Medical Center is foreclosed by operation of law. "'Under Illinois law, a contract that violates a law is 'void *ab initio*'… And 'a contract that is void *ab initio* is treated as though it never existed.'" *ABC & S, Inc. v. MacFarlane Grp., Inc.*, No. 13 C 07480, 2015 WL 300483, at *4 (N.D. Ill. Jan. 22, 2015) (quoting *People v. Caban*, 318 Ill. App. 3d 1082, 1089, 743 N.E.2d 600, 606 (2001); and *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 164, 821 N.E.2d 706, 713

---

[2] This evidentiary material may be considered by the Court pursuant to Rule 12(d), and the Court may treat this argument as one for summary judgment.

[3] The documents attached to Defendants' Exhibit B are self-authenticating public records and admissible pursuant to Rule 902 of the Federal Rules of Evidence.

(2004)). Indeed, it is against the public policy of Illinois for physicians not licensed in Illinois to own medical services corporations. *Carter-Shields, M.D. v. Alton Health Inst.*, 201 Ill. 2d 441, 462, 777 N.E.2d 948, 959 (2002).

Recognizing that he cannot be an owner of the Medical Center, Plaintiff advances an untenable contention. He alleges that "if Maher cannot be part owner of a Medical Center in Illinois, then this would constitute further fraud by Naser." SAC, ¶ 39. This "further fraud" is never described anywhere in the Complaint. Instead, Plaintiff invokes the height of conjecture by alleging that at some unspecified time, in some unspecified place, and in some unspecified way, he "*saw* a document labeled 'trust' where the beneficiaries of the Medical Center were all three brothers." *Id.*, ¶ 2 (emphasis added). Maher does not attach that document to the Complaint, does not identify who holds the trust, does not identify who the trustee is, or allege anything else about this purported document. In any event, it is untrue. Def. Ex. A, ¶ 9. Regardless, no trust permits or could permit Maher to have an interest in the Medical Center, because he is not a physician licensed in Illinois. Even if there were such a document, it would be void *ab initio* under Illinois law and have no legal effect. *ABC & S*, 2015 WL 300483, at *4.

In short, there are no facts that Maher alleges or could ever allege from which the Court could conclude that he has a legal interest in either the property or the Medical Center that would entitle him to an accounting of either. Accordingly, Count II should be dismissed with prejudice.

**III.     Count III should be dismissed, because Plaintiff does not own Open MRI, cannot own Open MRI by operation of law, and, therefore, has no standing to seek an accounting.**

In Count III, Maher seeks an accounting of the income and expenses of Open MRI from 2002 to the present. As with the claims for accountings of the property and the Medical Center, Count III also fails because Maher does not own Open MRI. Further, as with the Medical Center, Open MRI

8

is a medical services corporation, and Maher is legally barred from having an ownership interest in it.

As alleged in the Complaint, when Maher entered into an employment agreement with Naser on April 22, 2002, he contemporaneously granted Naser "his irrevocable proxy to vote all of his shares of stock" and the "option … to acquire all of his shares of stock in the Company." SAC, Ex. D at 9, ¶ 9. The same day, Maher and Naser signed a Stock Option Agreement and an Irrevocable Proxy. Def. Exs. C and D.[4] On August 4, 2005, Naser exercised his option pursuant to the parties' agreements, and bought all shares of Open MRI, becoming its sole owner and shareholder. Def. Ex. A, ¶¶ 10, 18-19, Ex. A:6.[5] On August 23, 2005, Open MRI became a medical services corporation subject to the Illinois Medical Practice Act, to enable physicians to interpret radiological films for the purposes of diagnosis. Def. Ex. A, ¶¶ 20-21, Ex. A:7. On November 14, 2005, to give effect to the exercise of Naser's option, the parties executed a Repurchase and Indemnification Agreement transferring all 1,000 shares of Open MRI stock from Maher to Naser, which was evidenced by a receipt signed by Maher. Def. Ex. A, ¶¶ 22-23, Exs. A:8-9. Since August 2005, Naser has been the only owner of Open MRI. Def. Ex. A, ¶¶ 10, 24. Maher has no current legal interest in Open MRI, and, therefore, no standing to bring an accounting claim.

Indeed, Maher *cannot* have a legal interest in Open MRI's business by operation of law. Even if the Complaint's allegation that Maher "owns" Open MRI is accepted as true, Maher is legally foreclosed from doing so. Open MRI has been a medical services corporation for thirteen years, and because Maher is not a physician licensed in Illinois, any ownership interest he may have had would

---

[4] *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (holding that court may consider records "to which the Complaint ha[s] referred" and that are "concededly authentic" under Rule 12(b)(6) without converting the motion into one for summary judgment pursuant to Rule 12(d)).

[5] Defendants' Exhibits A-4 through A-9, attached to the Declaration of Naser Rustom, are submitted pursuant to Rule 12(d).

9

be voided by Illinois law. *ABC & S*, 2015 WL 300483, at *4. Accordingly, there is no legal basis upon which Maher can sue Naser for an accounting of Open MRI's records, and Count III should be dismissed with prejudice.

## IV. Count IV fails to state a claim, because the statute of limitations has expired.

Count IV, for common law fraud, is a catchall and overlaps with Counts I through III. It alleges that as a result of Maher's reliance on Naser's unspecified false representations, Maher lost ownership of the property, was "falsely lead [*sic*] to believe that he was a one-third owner of the Medical Center," and "Maher allowed Naser to manage Preferred Open MRI Ltd., from which Naser wrongfully took income and assets not belonging to him." SAC, ¶¶ 53, 55. Count IV should be dismissed, with prejudice, because the statute of limitations for common law fraud has long since expired in each instance, and the claims are now time-barred.

In Illinois, the statute of limitations for common law fraud is five years. 735 ILCS 5/13-205; *Gilbert Bros., Inc. v. Gilbert*, 258 Ill. App. 3d 395, 400, 630 N.E.2d 189, 193 (1994); June 25, 2018 Memorandum Opinion and Order [Dkt. 69] at 4 n.2. With respect to the alleged fraud involving the Medical Center, Count IV states that Naser's "fraud" happened in either 1994 or 1995. SAC, ¶¶ 2, 15. Thus, as to the Medical Center, the statute of limitations expired at least eighteen years ago, and nothing alleged in the Complaint excuses the delay in bringing suit. The same is true for Open MRI. There are no allegations of fraud anywhere in the Complaint that specifically involve Open MRI. Instead, the Complaint lumps the undescribed "1999 false and fraudulent conduct of Defendant Naser" onto Open MRI without explanation, and even though Open MRI did not exist until 2002. SAC, ¶ 45, Ex. D. Even if there were some connection, the alleged fraud concerning Open MRI expired fourteen years ago based on the Complaint's plain allegations. "Where it appears from the face of the complaint that the statute of limitations has run," the Court should dispose of the claim

10

by way of a motion to dismiss. *Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 456, 845 N.E.2d 792, 802 (2006).[6]

The statute of limitations for common law fraud also expired fourteen years ago with respect to the quitclaim deed. In this instance, unlike the other two, and apparently recognizing that the statute of limitations has long since expired, Plaintiff tries to extend the time to recover on the deed by seemingly invoking the discovery rule, alleging that he "learned for the first time" in August 2017 that ownership of the building transferred from him to Naser in 1999. SAC, ¶ 54. However, when it comes to quitclaim deeds (as with all other contracts), a signatory is charged with knowing what he signed. A "deed speaks for itself and the only purpose of construction is to find out what it means, and that depends upon the language used." *Corbridge v. Westminster Presbyterian Church & Soc.*, 18 Ill. App. 2d 245, 259, 151 N.E.2d 822, 830 (Ill. App. Ct. 1958). Here, the quitclaim deed, in plain language, states that Maher "convey[s] and quit claim[s]" the property to Naser, "hereby releasing and waiving all rights" to it. SAC, Ex. B at 1. Even putting aside what the deed unequivocally states on its face, there is no plausibility to the notion that a purported owner of a building fails to realize he is not the owner for almost two decades. *See Teamsters Local 282 Pension Tr. Fund v. Angelos*, 839 F.2d 366, 371 (7th Cir. 1988) (finding "Illinois law imposes upon the plaintiff a duty to investigate when all the circumstances, evaluated in their totality, reasonably require, as a matter of prudence, that an investigation be undertaken"). *Cf. Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 56, 36 N.E.3d 266, 282, *as modified on denial of reh'g* (Aug. 3, 2015) ("purchaser … is charged with constructive notice of what appears in the chain of title"). It strains credibility to the breaking point to believe that for almost two decades, Maher never bothered to

---

[6] The Complaint also references "Naser's recent 2018 allegation that he purchased the company in 2005." SAC, ¶ 45. The Complaint does not allege that this statement is false, or that the statement induced Maher to take any action whatsoever. This allegation falls exceptionally short of satisfying the requirements for common law fraud in Illinois. *See* Section V, *infra*.

11

"check on his property" to "make sure that the property tax was being paid" and that he did so only "for the first time" in August 2017.[7]

Even if there were some modicum of plausibility to the allegation, the discovery rule is unavailing here. Nothing in the Complaint suggests that Naser did anything to purposefully conceal the alleged fraud from Maher. *See Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 38, 46 N.E.3d 706, 717, *opinion modified on denial of reh'g* (Jan. 28, 2016) ("concealment necessary to toll the statute of limitations must consist of affirmative acts or representations calculated to lull or induce a plaintiff into delaying the filing of his claim or preventing him from discovering the claim"); *Serafin v. Seith*, 284 Ill. App. 3d 577, 590, 672 N.E.2d 302, 311–12 (1996) (citations omitted) ("concealment requires affirmative acts or representations designed to prevent discovery of the cause of action … Silence alone does not ordinarily constitute fraudulent concealment."). In the absence of any such allegations, the discovery rule cannot apply. *Cf. Hawkins v. Nalick*, 2012 IL App (5th) 110553, ¶ 25, 975 N.E.2d 793, 798 (rejecting discovery rule in the context of conversion of negotiable instruments and strictly applying three-year statute of limitations).

**V.   The Complaint does not allege fraud with the requisite specificity under Illinois law or Federal Rule of Civil Procedure 9(b).**

The Complaint should be dismissed in its entirety, because it is wholly deficient as a matter of law. It is also deficient as a matter of pleading. The entire Complaint is based on allegations of fraud. Fraud must be alleged with particularity. Fed. R. Civ. P. 9(b).

---

[7] The Complaint alleges that "Maher still receives the property tax bill in his name." SAC, ¶ 25. That allegation does not help. First, the 2015 property tax bill is addressed to "Maher Rustom or Current Owner." Second, the tax bill identifies an address in Palos Heights, but Maher does not allege that the Palos Heights address is his. SAC, Ex. C. Third, the Complaint does not allege that Maher paid the taxes on this property, which, theoretically, would have at least made his "discovery" in 2017 somewhat more plausible.

In Illinois, "[i]n order to establish a cause of action for fraud, plaintiffs must allege and prove that the defendants: (1) made a false statement of material fact; (2) that defendants knew or believed it to be false; (3) that defendant made said statement with the intent to induce action by another in reliance on the statement; (4) that there was an action by the other in reliance on the truthfulness of the statement; and (5) that there was injury to the other resulting from that reliance." *Jeffrey M. Goldberg & Assocs., Ltd. v. Collins Tuttle & Co., Inc.*, 264 Ill. App. 3d 878, 884-85, 637 N.E.2d 1103, 1108 (1994). The "first element includes three requirements: (1) the defendant must make a misrepresentation; (2) it must involve a fact; and (3) the misrepresentation must be material." *Wernikoff v. Health Care Serv. Corp.*, 376 Ill. App. 3d 228, 233, 877 N.E.2d 11, 16 (2007). "A statement of material fact is one upon which the plaintiff could reasonably rely in determining whether or not to act." *Jeffrey M. Goldberg*, 264 Ill. App. 3d at 885, 637 N.E.2d at 1108.

The Complaint provides none of the detail required by Rule 9(b). Instead, in the broadest of strokes, Maher alleges that: (1) Naser made a "false statement" with respect to Naser's acquisition of the subject property; (2) there were "intentional false statements" with respect to ownership of the Medical Center: and (3) there was "1999 false and fraudulent conduct" that somehow (but inexplicably) relates to Open MRI. SAC, ¶¶ 17, 31, 45. The Complaint never precisely identifies these false statements that Naser allegedly made to Maher to induce him to sign the quitclaim deed or to do anything at all concerning the Medical Center or Open MRI, let alone the time, place, or method of such communications or why any particular statement was materially false. Without these facts, the Complaint fails to satisfy the elements for fraud under Illinois law, or the requirements of Rule 9(b). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (Rule 9(b) requires "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (citation omitted); *DiLeo v. Ernst & Young,* 901 F.2d 624, 627

(7th Cir. 1990) (Rule 9(b) requires pleading "the who, what, when, where, and how"). *See Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed. Cir. 2009) (Rule 9(b) "requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind").

### A. The Complaint is deficient in pleading fraud as to the quitclaim deed.

In addition to the dearth of information in the Complaint, given the plain language of the 1999 quitclaim deed that Maher admits he signed, there is no fact alleged in the Complaint from which one could infer that Maher *reasonably* relied on a material false statement. *Angelos*, 839 F.2d 366, 370 ("Under Illinois law, one essential element of fraud is justifiable reliance on the alleged fraudulent statements."). Though Maher alleges that "he believed [the quitclaim deed] would permit Naser to manage the building," the deed's language plainly states otherwise: Maher "convey[s] and quit claim[s]" the property to Naser, "hereby releasing and waiving all rights" to it. SAC, ¶ 18, Ex. B at 1. A "grantor's intent is to be construed from the four corners of the deed," and a party's "belief" is irrelevant. *Mann v. Mann*, 283 Ill. App. 3d 915, 918, 671 N.E.2d 73, 76 (1996). *See In re Blair*, 330 B.R. 206, 212 (N.D. Ill. 2005) (applying Illinois law and holding that "with the deed clear on its face and its effect well-established as a matter of law," the grantors of a quitclaim deed cannot claim the deed reflected a different intent and was meant "to accomplish something else entirely"); *Lindy Lu LLC v. Illinois Cent. R. Co.*, 2013 IL App (3d) 120337, ¶ 26, 984 N.E.2d 1171, 1176–77 (holding that a "person may not enter a transaction with his eyes closed to available information and then charge that he has been deceived by another"). Maher's "belief" is unjustified, because the execution and recording of a deed by a grantor constitutes *prima facie* evidence of its legal operation. *Maciaszek v. Maciaszek*, 21 Ill. 2d 542, 546, 173 N.E.2d 476, 478 (1961).

14

Maher challenges the facially valid, properly recorded deed by alleging that he does not speak English well. SAC, ¶¶ 1, 19.[8] But, a lack of English proficiency is not a defense to the enforcement of the conveyance of title through a deed. *Spina v. Spina*, 372 Ill. 50, 58, 22 N.E.2d 687, 690–91 (1939) (holding that a party's inability to "read and write English" is no defense to the enforcement of a deed); *cf. Shulman v. Moser*, 284 Ill. 134, 140, 119 N.E. 936, 938 (1918) (holding that illiteracy is not a defense to a contract); *Mizyed v. Palos Cmty. Hosp.*, 2016 IL App (1st) 142790, ¶ 55, 58 N.E.3d 102, 116, *appeal denied,* 60 N.E.3d 875 (Ill. 2016) (same).

### B. The Complaint fails to plead fraud as to the Medical Center and Open MRI.

Nothing in the Complaint describes Naser's specific "fraudulent conduct" as to either the Medical Center or Open MRI. Rather, Maher alleges—in the most general way—that he "relied on Naser's intentional false statements to give him one-third ownership" of the Medical Center, but he does not identify what Naser said, when he said it, whether he knew such statements to be false at the time, why Maher was reasonable in relying on any such statements, or anything else about this alleged "fraud."

Concerning Open MRI, Maher alleges "1999 false and fraudulent conduct" by Naser. He does not identify the specifics of that fraudulent conduct. Open MRI was not even in existence in 1999, and nothing in the Complaint ties alleged 1999 fraud to Open MRI. Rather, Maher takes the wholly speculative leap that because some alleged fraud happened before Open MRI was even created, the income and expenses Naser reported for Open MRI "are not truthful." SAC, ¶ 45. However, the Complaint alleges no nexus between these two assertions, and there is no factual basis for this allegation found anywhere in the Complaint.

---

[8] Exhibits to the Complaint and the many other English-language documents submitted by Maher in this litigation make this allegation specious. SAC, Ex. D; Plaintiff's Affidavits [Dkts. 25-1; 29-1; 34; 43-1; 53-1]. *See Tamayo*, 526 F.3d 1074, 1086 (noting "our pleading rules do not tolerate factual inconsistencies in a complaint").

15

## CONCLUSION

This is Plaintiff's third pleading of his claims. Yet, nothing alleged in the current Complaint supports viable claims for quiet title, accountings, or common law fraud, and, under any set of facts, Plaintiff will not be able to allege cognizable legal claims. For these reasons, the Verified Second Amended Complaint should be dismissed in its entirety, with prejudice, and with such additional relief as the Court may deem just and appropriate.

Dated: June 26, 2018

Respectfully submitted,

/s/ José J. Behar
One of the Attorneys for Defendants

Matthew J. Piers
José J. Behar
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, IL 60602
312.580.0100
mpiers@hsplegal.com
jbehar@hsplegal.com

Russell C. Green
LAW OFFICE OF RUSSELL C. GREEN
200 S. Michigan Ave., Suite 201
Chicago, IL 60604
312.408.0076
rcglawchicago@gmail.com