# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAHER RUSTOM,<br>                            Plaintiff,<br>    v.<br>NASER RUSTOM and the NORTH STAR<br>TRUST COMPANY, Trust Number 01-3775,<br>Corporation,<br>                            Defendants. | Case No. 1:17-cv-09061<br><br>Judge: Marvin E. Aspen<br><br>Magistrate Judge: Jeffrey Cole |

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

Now Comes Plaintiff, Dr. Maher Rustom ("Maher"), by and through his counsel, M James Salem, who submits this Memorandum of Law in opposition to Defendant Naser Rustom's ("Naser") Motion to Dismiss Plaintiff's Verified Second Amended Complaint (Doc. 61), and states the following:

### INTRODUCTION

Plaintiff Maher initially filed a verified complaint (Doc 1) as the only Plaintiff. Maher resides in and is domiciled in Saudi Arabia. The initial Defendants, Naser Rustom ("Naser"), is domiciled in Illinois and Galilee Medical Center, S.C. is incorporated in Illinois. In the Verified First Amended Complaint, Preferred Open MRI Ltd., was added as Co-Plaintiff, but due to the fact that it is an Illinois corporation, it destroyed complete diversity jurisdiction. Thereafter, a Verified Second Amended Complaint was filed to remove Co-Plaintiff and restore jurisdiction.

In addition to quiet title claim, in a commercial building, Plaintiff Maher claims one-third of the equitable value in Galilee Medical Center, S.C. (based on Maher's

1

investment) and all the equity in Preferred Open MRI, Ltd. (based on Maher owning 100% of the shares). Maher claims Naser created a fake quitclaim deed for the subject building and wrongfully took the equity in the medical center and embezzled money from the MRI company. The fraudulent acts alleged by Plaintiff all state the required elements for fraud. Naser now moves to dismiss the verified second amended complaint and this Memorandum is in opposition.

## **STATEMENT OF FACTS**

1. This is a dispute between two brothers, the older brother, Plaintiff Dr. Maher Rustom, ("Maher") who is and has always been a subject (or citizen) of the country Saudi Arabia, was educated outside the United States and does not speak or write English well, in that he will need a translator to give testimony. The younger brother, Defendant Dr. Naser Rustom ("Naser") came to the United States in 1984, was educated in this country and became a citizen in the late 1980's. He speaks and writes English fluently and has become adapted to the culture and the norms of this country.

2. On September 26, 1995, Maher purchased a commercial building that produces income from ten (10) tenants. See **Exhibit A**. After Maher purchased the building he entered into an agreement with his brother, Defendant Naser Rustom ("Naser"), to manage the building and use the rent to pay the mortgage and other expenses. The reason Maher purchased the building, *inter alia*, was that in 1994, Maher and Naser, together with their now deceased brother Amer Rostom ("Amer"), created the company Galilee Medical Center, S.C. ("the Medical Center"), where Amer and Maher each have one-third (1/3) ownership interest and where the Medical center will be a tenant in Maher's building, rent-free. The rent-free arrangement in Maher's building was

his investment in the Medical Center, in exchange for one-third ownership in the company. Amer died in 2011, and about eight years earlier Maher, with his brother Amer, saw a document labeled "trust" where the beneficiaries of the Medical Center were all three brothers, with one-third interest each.

      3.      Maher, from time-to-time, travels back-and-forth from Saudi Arabia to the U.S. and on one trip, in 1999, he signed a one paged document that he believed would permit Naser to manage the building and act on his behalf as the owner, see the first page of **Exhibit B**. The notarized signature on the third page, entitled Statement by Grantor and Grantee, of **Exhibit B** is not his; it is a forgery. Maher never intended to transfer to Naser the ownership of the subject property via the Quiet Claim Deed, shown hereto as **Exhibit B**. Moreover, the notary on the second page that supposedly notarizes the signature on the first page, is a different person than the notary on the third page. However, both the second and third pages were notarized by different notaries, and supposedly they were notarized on the same day: October 29, 1999. Maher never gave Naser authorization to transfer the property to his name and never signed a power of attorney to Naser. Maher never needed to give a power of attorney because he initially purchased the subject building in his own name, without the use of a power of attorney.

      4.      No consideration was transferred, notwithstanding the statement on page one of the Quiet Claim Deed that ten dollars was paid, which is a rebuttable presumption. Since 1995 to August 2017, both Maher and Naser publicly admitted, before family, relatives and friends, that Maher was the owner of the subject building. The current fair market value of the property is $425,000 and it was recently listed for sale for this amount. Maher seeks to quiet title to establish his ownership of the building in his name

and void the Quiet Claim Deed shown as **Exhibit B**.  Maher also seeks an accounting of the subject building's rent income and expenses, as well as an accounting of the Medical Center from Defendant Naser.

5.    Maher also seeks an accounting of Preferred Open MRI Ltd., which is a company that he owns 100% of the Shares, and Naser was the President, Secretary and Treasurer, until March 1, 2018, see attached corporate resolution, **Exhibit D,** last page.  By a corporate resolution Naser was removed as an officer by Maher.  Naser employment terminated in 2012, and since then he has been an at-will-employee and the corporate resolution terminates his at-will employment. **Exhibit D** is the Articles of incorporation, showing Maher owns 100% of the Shares, the employment agreement with Naser and the corporate resolution removing Naser from the company.

6.    Jurisdiction exists in this Court by reason of complete diversity of citizenship, 28 U.S.C. § 1332.  Plaintiff Maher Rustom is *domiciled* in and is a citizen of the country Saudi Arabia and he is the only Plaintiff.  The Defendant is *domiciled* in Cook County, Illinois.  Defendant North Star Trust Company is an Illinois Corporation.  Thus, there is complete diversity jurisdiction.  The amount in controversy exceeds $75,000, exclusive of interests and costs.  The amount in controversy is $425,000 in real property value and an additional amount from an accounting.  Venue in Illinois is based on where the subject real property and assets are located.

7.    Plaintiff, Maher Rustom, is a doctor who resides in, and is employed in, Saudi Arabia and he is the owner of the subject assets and real property.

9. Defendant, Naser Rustom, is also a doctor and a citizen of Illinois in the United States and currently he is the named owner of the subject real property and has possession of the subject assets.

10. Defendant, NORTH STAR TRUST COMPANY, in an Illinois company that holds the subject real property in trust: Trust Number 01-3775.

11. The Plaintiff, Maher Rustom, ("Maher") is and has always been a subject (or citizen) of the country Saudi Arabia. Maher is a doctor educated in Syria and who is currently practicing medicine in Saudi Arabia.

12. Maher has a visa to the United States, which he uses to travel to this country, from time-to-time, where his mother and brother Naser reside.

13. In 1995, Maher personally purchased a commercial building located at 4941 North Kedzie, Chicago, Illinois, in his name and without the use of a power of attorney, which produces income from ten (10) tenants. **Exhibit A**.

14. After Maher purchased the building he entered into an agreement with his brother, Defendant Naser Rustom ("Naser"), to manage the building and use the rent to pay the mortgage and other expenses.

15. Also, in 1995, Maher, Amer Rostom his deceased brother, and Naser created the company Galilee Medical Center, S.C. ("the Medical Center"), where Maher has one-third (1/3) ownership interest and where it would be a tenant in Maher's building rent-free.

16. Amer died in 2011, and about eight years earlier Maher, with his brother Amer, saw a trust document where the beneficiaries of the Medical Center were all three brothers, with one-third interest each.

17. In the event Maher could not be part owner of the Medical Center, then this would constitute further fraud by Naser, where Maher relied on Naser's intentional false statements to give him one-third ownership and Maher was damaged by giving the Medical Center a rent-free facility to start its business.

18. In 1999, just before going back to Saudi Arabia, Maher signed a one-page document that he believed, according to Naser, would permit Naser to manage the building and act on his behalf, as the Landlord. This was an intentional false statement by Naser to Maher. This one-page document is the first page in **Exhibit B**. Maher never signed the third page of that document and the notarized signature on the third page is not Maher's.

19. Maher never spoke or wrote English well enough and completely depended and trusted his younger brother Naser with all the investments he made in the United States. Maher never had any intentions of transferring to Naser the ownership of the subject property via the Quiet Claim Deed, shown hereto as **Exhibit B**, recorded in the Cook County Recorder, on November 12, 1999, as document number 09063207.

20. Maher never signed the third page of the Quiet Claim Deed before a notary. Although he signed the first page, he did so believing that it would permit Naser to act on his behalf as landlord to manage the building and he did NOT sign it before a notary.

21. The notary on the second page of **Exhibit B** who allegedly notarized Maher's signature on the first page, never did so in the presence of Maher, and this notary is a different person than the notary on the third page. However, both the second and

third pages were notarized by different notaries, and supposedly they were notarized on the same day: October 29, 1999.

22. Maher never gave Naser authorization to transfer the property to his name and never signed a power of attorney to Naser. Maher never needed to give a power of attorney because he purchased the subject building in his own name, without the use of a power of attorney, **Exhibit A**.

23. From 1995 to 2017, both Maher and Naser acknowledged publicly before family, relatives and friends that Maher was the owner of the subject building.

24. Moreover, no consideration was ever transferred, notwithstanding the statement on page one of the Quiet Claim Deed, **Exhibit B**, that ten dollars was paid. This is a rebuttable presumption.

25. In *August 2017, Maher* went to attorney, Vivian Khalaf, to check on his property and make sure that the property tax was being paid. Maher still receives the property tax bill in his name, see **Exhibit C**. Maher learned for the first time from Ms. Khalaf that the ownership of the building was transferred to Naser in 1999. *August 2017,* was the date Maher first learned of the fraud perpetrated by Naser, and when the cause of action for fraud accrued.

26. The current fair market value of the property is $425,000 and it was recently listed for sale for this amount.

27. Naser transferred the ownership of the subject property into a trust held by Defendant North Star Trust Company, Trust Number -01-3775.

28. Maher seeks to quiet title in his name, to declare the Quiet Claim Deed shown as **Exhibit B** as void, and to have an accounting of the income and expenses for

the subject building and the Medical Center from 1995 to the present time, and an accounting from 2002 to the present for Preferred Open MRI Ltd.

## STANDARD OF REVIEW

A complaint will be dismissed under Rule 12(b)(6) unless it clears two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual information to give the defendant "fair notice" of the claim so that it can prepare its defense. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (internal quotation omitted). Second, the complaint must plausibly suggest that the plaintiff has a right to relief, the allegations raising that right above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). "[t]he Rules of Civil Procedure set up a system of notice pleading," under which, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013). The Verified Second Amended Complaint satisfies

the notice pleading requirement.

## ARGUMENT

### I. Defendant Naser's counsel stated facts that were not alleged in the Verified Second Amended Complaint.

In the "Complaint Allegations" section of Defendant's motion to dismiss, he states false allegations or allegations that are not in the Complaint. <u>First</u>, in 1999 Plaintiff Maher signed the first page of a quitclaim deed. The signing of the first page did not "transfer [] ownership of the property to Naser Rustom," and nowhere in the Complaint is this alleged. <u>Second</u>, Maher did not "admit [] that the quitclaim deed was duly recorded with the Cook County Recorder." Maher never authorized such recording and he did not sign the third pages of the quitclaim deed. <u>Third</u>, the false statement Naser said to Maher was that he "will manage the property for Maher" (Compl. #18, 34). <u>Fourth</u>, counsel implies that Maher abandoned the property for 17 years, but that is false because Maher received rent from the tenants during that time via Naser (Compl. #13 & 14). This is the reason an accounting is needed to determine the lost rent and income previously generated. (Compl. #41 & 47). <u>Fifth</u>, another false statement by Naser was that Maher will own 1/3 of the medical center. (Compl. #2) In reliance on on that false statement, the medical center operated rent-free until today in Maher's building.

### II. Plaintiff Maher stated all the required elements for a claim to quiet title.

A quiet title action is an equitable proceeding wherein a party seeks to settle a dispute over ownership of a property or to remove a cloud on his title to the property. *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 811-12 (1985); see also *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009). A cloud on title

is the semblance of title, either legal or equitable, appearing in some legal form, but which is, in fact, unfounded or for which it would be inequitable to enforce. *Estrada*, 134 Ill. App. 3d at 812.

In this case, Plaintiff Maher has title to the property, **Exhibit A** to the Complaint. It is the only legitimate title and Maher has always been in possession of the property at all times because he was receiving monthly rent payments via Naser. (Compl. #13 & 14). The false and fraudulent quitclaim created by Naser, **Exhibit B** to the Complaint, is not a legitimate valid title of ownership. Naser's quitclaim deed is a fake document, it does not have Maher's signature on the third page and the notary stamp on the second page does did not notarize Maher's signature on the first page. In that, Maher never signed the first page before the notary. Naser's fake and invalid quitclaim deed, **Exhibit B**, is a cloud on the only true title of ownership, which is Maher's deed shown as **Exhibit A** to the Complaint.

### III. Plaintiff stated the elements required for an accounting claim.

"To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law." *Kempner Mobile Elec. Inc. v. Southwestern Bell Mobile Sys.,* 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann v. Kemper Fin. Co., Inc.,* 247 Ill.App.3d 966, 980, 618 N.E.2d 317, 187 Ill.Dec. 726 (1st Dist. 1992)). "In addition to the absence of an adequate remedy at law, the plaintiff must allege at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner,* 428 F.3d at 715.

<u>First</u>, there was a fiduciary relationship between Maher and his younger brother who managed his investments in this United States and who was an officer in a company where Maher owns 100% of the shares, Preferred Open MRI Ltd. *Harris Assocs. v. Jones*, No. 07-1624 (7th Cir. May 19, 2008). <u>Second</u>, there is a need for discovery to determine whether the monthly money received by Maher over the years was the correct amount, given that Naser has not considered Maher as having any ownership interest in the subject building and the companies in question. <u>Third</u>, Naser has committed fraud in creating a fake quitclaim deed, in receiving free rent facility for the medical center to operate, without giving Maher 1/3 ownership in the medical center and in claiming that he purchased Preferred Open MRI Ltd., from Maher in 2005, with a fake purchase contract. <u>Fourth</u>, the accounts for the rent of the subject building, the expenses and income accounts for the medial center and the Preferred Open MRI Ltd., since 1995, are mutual accounts where some of the money belong to Naser to manage the property and his 2/3 ownership of the medial center, as well as for his salary in the MRI company. These are obviously complex accounts that will require a forensic accountant to analysis.

With respect to the medical center, whether or not Maher can have any ownership interest is irrelevant because it is not an issue. Here Naser made a false statement to Maher, which is that Maher has 1/3 ownership interest in the medical center. This was an intentional false statement and Maher's reliance on this false statement led him to give a rent-free facility for the medical center to operate since 1995. This was his damage from his reliance on Naser's false statement. Maher is not seeking 1/3 ownership in the medical center, he is seeking either the equitable value of 1/3 of the medical center or the rent payments from 1995 for the medical center.

With respect to the MRI company, there are many non-doctors who own MRI company and there is no law or regulation against a non-doctor owning an MRI company. If the MRI company currently owns medical centers, then this was done without Maher authorization and Maher will not take ownership of those medical centers. They will either be closed or sold to doctors. As far as Maher is concerned, Naser was an employee who was fired from the MRI company on March 1, 2018. However, Maher needs a proper turnover of the company from Naser, the former president of the company, to the current president, and an accounting to determine how much money Naser embezzled.

**IV.     Plaintiff has stated a claim for common law fraud that resulted in the loss of his investments in the United States.**

The elements of common-law fraud are: "(1) a statement by defendant; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff's injury." *Duran v. Leslie Oldsmobile*, 229 Ill.App.3d 1032, 171 Ill.Dec. 835, 594 N.E.2d 1355, 1360 (1992). "[S]uch reliance must be reasonable." *Id*.

First, the false statements by Naser were of a material natural, which are: 1) that Naser would manage the subject building for Maher and send him the rent, 2) that Maher will own 1/3 of the medical center in exchange it will not have to pay rent in Maher's building, 3) that Naser will be the president of the MRI company and forward the profits earned to Maher. Second, these statements were untrue because 1) Naser created a fake

quitclaim deed in 1999 and placed the subject building in his name, 2) Naser never gave Maher 1/3 ownership of the medical center, in fact he could not do such a thing by law because a doctor not licensed in Illinois cannot own any part of a medical center, but Naser received the benefit of not having the medical center paying rent, and 3) Naser did not forward all the profits earned by the MRI company to Maher. These statement were known to be false by Naser because of his overt acts and omissions stated in the Complaint. In that, Naser considered himself the owner of Maher's investments in the United States.

Maher reasonably relied on his younger brother Naser to manage his investments in the United States because both were going to make money from these investments. This reliance led to Maher losing ownership of his commercial building, 1/3 ownership in the medical center and all the profits earned by the MRI company.

> **V.** **The statute of limitation had not expired it is tolled because Plaintiff was receiving regularly monthly income from his investments and within a few months of learning that the ownership was fraudulently changed, he commenced this action.**

With respect to the building in question, Plaintiff Maher was receiving regular monthly rent and he was paying property taxes in his name, see **Exhibit C** to the Complaint, until August 2017, when Maher learned for the first time that despite the property taxes being in his name, Naser was the owner because he filed a fake quitclaim deed. (Compl. 25). The statute of limitation for fraud is tolled to the time of discovered.

A discovery rule, "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." See *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). "This principle is

based on the general rule that accrual occurs when the plaintiff discovers that `he has been *injured* and who *caused* the injury.'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (quoting *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000) (emphasis in original)). Fraudulent concealment is a type of tolling within the doctrine of equitable estoppel. Fraudulent concealment "presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant — above and beyond the wrongdoing upon which the plaintiff's claim is founded — to prevent the plaintiff from suing in time." *Cada*, 920 F.2d at 451. In order for a plaintiff to benefit from tolling for fraudulent concealment, he must show "that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997).

In this case, the Defendant Naser concealed the fake quitclaim deed from his brother Maher, who trusted him and who resided in Saudi Arabia. Naser's efforts were making monthly payments to Maher as the owner and telling family members, relatives and friends that Maher was the owner. Maher, who resides in and is domiciled in Saudi Arabia at all times herein, neither knew nor, with exercising due diligence, could have reasonably known of Naser's fraudulent acts.

The property tax payments were in Maher's name, **Exhibit C** to the Complaint (Compl. 34). Maher's family, relatives and friends all understood that the subject building was owned by Maher, as well as his 1/3 share in the medical center and his ownership interest in the MRI company. Maher did not and does not speak or write English well (Compl. #1) and it was reasonable for him to trust and depend on his

14

younger brother, Naser, who received an education in the United States and who resided in the United States as a citizen since 1980 (Compl. 1). Maher was receiving monthly payments as rent from the subject building and his ownership interest in the medical center and the MRI company, some of which were invested in his companies (Compl. 14, 15 & 41). Given these undisputed facts, Maher could not have reasonable known Naser fraudulent transferred title of ownership of the subject building to himself, until the attorney Vivian Khalaf explained to Maher, in August 2017, that even though the tax bill was in his name, **Exhibit C**, the deed was not. (Compl. 34). Thus, the statute of limitations is tolled by the doctrine of equitable estoppel. *Id*.

Finally, the statute of limitations for the MRI company is not applicable because Maher never transferred the ownership of the company to Naser and it is Naser who will have the burden to enforce his false and fraudulent purchase contract to take ownership of the MRI company. Currently, Naser was an employee of the MRI company who was fired on March 1, 2018.

## CONCLUSION

Under the notice pleading requirement, Defendant Naser Rustom has sufficient notice of the wrongful acts alleged against him. The elements for all the causes of action have been stated and thus, Defendant Naser's Rule 12(b) motion should be denied in its entirety.

July 13, 2018,

/s/M James Salem,
Attorney for Plaintiff
Salem Law Office
7156 W. 127th Street, B-149
Palos Heights, IL. 60463
Tel. (708) 277-4775
salemlaw@comcast.net

## CERTIFICATION OF SERVICE

I, M James Salem, am the attorney for Plaintiff and I hereby certify that I served a true copy of the above Memorandum on all counsels of record by electronic means via the Court's CM/ECF system, on July 13, 2018.

/s/ M James Salem