IN THE UNITED STATES DISCTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAHER RUSTOM,                )
                             )
    Plaintiff,               )
                             )
    v.                       )   No. 17 C 9061
                             )   Hon. Marvin E. Aspen
NASER RUSTOM and NORTH STAR  )
TRUST COMPANY,               )
                             )
    Defendants.              )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Maher Rustom filed this action asserting claims for quiet title, equitable accounting, and fraud relating to the ownership of a commercial property and two businesses. Presently pending is Defendants Naser Rustom and North Star Trust Company's motion to dismiss Plaintiff's second amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Mot. (Dkt. No. 70).) Defendants also seek judgment on Plaintiff's accounting claims pursuant to Rules 12(d) and 56(a). For the reasons set forth below, we grant Defendants' motion to dismiss Counts I and IV, as well as Count II as it relates to the property, without prejudice pursuant to Rules 9(b) and 12(b)(6). In addition, under Rules 12(d) and 56(a), we grant Defendants' motion for summary judgment on Counts II and III as to the businesses.

## BACKGROUND

Plaintiff's verified second amended complaint sets forth a dispute with his brother, Naser Rustom ("Naser"), concerning ownership of commercial real estate and two companies. (*See* 2d Am. Compl. (Dkt. No. 61).) Plaintiff is a doctor educated in Syria and is a citizen of Saudi Arabia, where he currently practices medicine. (*Id.* ¶¶ 7, 11.) Naser is also a doctor and is

a citizen of Illinois. (*Id.* ¶ 9.) Plaintiff has a visa to the United States, which he uses to travel to this country "from time-to-time" including to visit Naser and their mother. (*Id.* ¶¶ 3, 12.)

        A.        **The Property at 4941 N. Kedzie, Chicago, Illinois**

On September 26, 1995, Plaintiff bought a commercial building located at 4941 N. Kedzie, Chicago, Illinois (the "property"). (*Id.* ¶¶ 2, 13; *see also* 1995 Deed (Dkt. No. 61–1).) Plaintiff alleges he entered into an agreement with Naser to manage the property and use the rent from the building's ten tenants to pay the mortgage and other expenses. (2d Am. Compl. ¶ 2.) On one visit to the United States in 1999, Plaintiff signed a quitclaim deed that transferred ownership of the property to Naser. (*Id.* ¶¶ 3, 18–19; *see also* 1999 Quitclaim Deed (Dkt. No. 61–2).) The quitclaim deed was recorded in the Cook County Recorder on November 12, 1999. (2d Am. Compl. ¶ 19.)

However, Maher alleges that he never intended to transfer ownership of the property to Naser, instead asserting Naser intentionally led him to believe the quitclaim deed would only "permit Naser to manage the building and act on his behalf" as the owner. (2d. Am. Compl. ¶¶ 3, 18–19, 30–31.) He "never spoke or wrote English well enough and completely depended and trusted his younger brother Naser with all the investments he made in the United States." (*Id.* ¶ 19.) Plaintiff also alleges he signed the first page of the quitclaim deed, but that his notarized signature on the Grantor and Grantee Statement attached to the deed is a forgery. (*Id.* ¶¶ 3, 18–22, 30–31.) Further, contrary to the language of the quitclaim deed, Plaintiff asserts no consideration was transferred for the property. (*Id.* ¶¶ 4, 24.) From 1999 to August 2017, both Plaintiff and Naser "publicly admitted, before family, relatives and friends, that [Plaintiff] was the owner of the subject building." (*Id.* ¶¶ 4, 23.)

Naser "currently . . . is the named owner of the subject real property and has possession of the subject assets." (*Id.* ¶¶ 9, 33.)[1] Plaintiff alleges he first learned that he had transferred ownership to Naser in August 2017 when he went to an attorney "to check on his property and make sure that the property tax was being paid." (*Id.* ¶¶ 25, 34.) Plaintiff contends he is the rightful owner of the property and seeks to remove the cloud on the title created by the 1999 quitclaim deed. (*Id.* ¶¶ 4, 28, 32.)

### B. The Medical Center

Plaintiff alleges he purchased the property in part to allow Galilee Medical Center, S.C. (the "Medical Center") to operate out of the building rent free. (*Id.* ¶ 2.) Plaintiff created the Medical Center along with his brothers Naser and Amer Rustom in 1994, and he alleges each had a one-third ownership interest in the business. (*Id.*) Plaintiff used the rent-free arrangement as his investment in the Medical Center in exchange for his one-third ownership stake. (*Id.*) Defendants argue Plaintiff never owned any part of the Medical Center, and Plaintiff alleges he relied on unidentified "intentional false statements" by Naser to give him one-third ownership and that "[i]n the event [Plaintiff] could not be part owner of the Medical Center, then this would constitute further fraud by Naser." (*Id.* ¶ 17.)

### C. Open MRI

In addition to the property and his alleged one-third ownership interest in the Medical Center, Plaintiff maintains he is the sole owner of a second business, Open MRI Ltd. (*Id.* ¶ 5.) Plaintiff asserts he owns 100 percent of the shares of Open MRI, and pursuant to an employment agreement, Naser was the President, Secretary, and Treasurer of the business until

---

[1] Plaintiff alleges elsewhere that Naser transferred ownership of the property to a trust held by North Star Trust Company. (*Id.* ¶ 27.)

3

March 1, 2018, when Plaintiff removed him from office. (*Id.* ¶ 5.) Plaintiff alleges he signed a corporate resolution on March 13, 2018 appointing Basil Salem as President, Secretary, and Treasurer of Open MRI. (*Id.*)

### D. Plaintiff's Claims

Plaintiff filed his verified second amended complaint on June 7, 2018. In Count I, he asserts a quiet title claim for the property. (*Id.* ¶¶ 29–35.) Count II seeks an accounting from Naser "for all income and expenses for the subject commercial building's rent income" as well as income for the Medical Center from 1999 to present. (*Id.* ¶¶ 36–42.) Similarly, in Count III, Plaintiff contends he is entitled to an accounting from Naser "for all income and expenses" for Open MRI from 2002 to present. (*Id.* ¶¶ 43–48.) Plaintiff alleges an accounting is necessary for the property, the Medical Center, and Open MRI because "[g]iven the 1999 false and fraudulent conduct of Defendant Naser, the income and expenses he reported . . . are not truthful." (*Id.* ¶¶ 38, 45.) Finally, in Count IV, Plaintiff asserts a claim for common law fraud, alleging Naser made false statements to Plaintiff (1) in connection with the 1999 quitclaim deed, (2) in leading Plaintiff to believe he was a one-third owner of the Medical Center, and (3) in taking all income and assets from Open MRI. (*Id.* ¶¶ 49–56.)

## STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

(2009). The plausibility standard is not a "probability requirement," but it asks for "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the plaintiff need not plead "detailed factual allegations," he must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. At the motion to dismiss stage, we accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

## ANALYSIS

Defendants have moved to dismiss all of Plaintiff's claims. Defendants argue Plaintiff's complaint is "replete with allegations of demonstrably false facts, that, even if accepted as true, cannot establish the elements of the causes of action pleaded and do not establish any cognizable claims." (Mem. in Support of Mot. to Dismiss ("Mem.") (Dkt. No. 72) at 1.) Defendants contend Plaintiff has not owned the property since he signed the quitclaim deed in 1999, he never owned the Medical Center, and he has not owned Open MRI since August 2005. (*Id.* at 4–10.) In addition, Defendants argue Plaintiff has failed to state a claim for common law fraud, and in any case, the entire complaint fails because it is grounded in allegations of fraud but fails to plead the circumstances constituting fraud with particularity under Federal Rule of Civil Procedure 9(b). (*Id.* at 12–15.) Finally, Defendant also argues Plaintiff's fraud claim is time-barred. (*Id.* at 10–12.)

## I. RULE 9(B)

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). To establish the "circumstances constituting fraud," the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted). In other words, the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011); *DiLeo*, 901 F.2d at 627. "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Id.*; *see also Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir. 2005) (finding the particularity requirement "forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims"); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003) (explaining the particularity requirement protects parties from "privileged libel").

Undoubtedly, Rule 9(b) governs Plaintiff's Count IV, which asserts a cause of action for common law fraud. (*See* 2d Am. Compl. ¶¶ 50–51 (alleging Naser "knowingly made a false statement to Plaintiff in having him sign the first page of the Quit Claim Deed . . . and stating that he can be one-third owner of the Medical Center" and Plaintiff relied on these false representations); *id.* ¶ 53 (alleging Plaintiff "was falsely lead [sic] to believe that he was a one-third owner of the Medical Center"); *id.* ¶¶ 52, 55 (alleging Naser forged Plaintiff's

signature on the third page of the quitclaim deed).) However, Plaintiff has not alleged the particulars of these averments of fraud as required by Rule 9(b). While Plaintiff establishes Naser as the person making the misrepresentations, he does not indicate the content of the allegedly false statements aside from vaguely stating that Naser led Plaintiff to believe that the quitclaim deed would give permission for Naser to manage the building and that Plaintiff owned one third of the Medical Center. It is unclear what Naser said to Plaintiff to induce him to sign the deed or to falsely suggest he owned part of the Medical Center, and Plaintiff includes no detail whatsoever that Naser said anything fraudulent regarding Open MRI. Further, Plaintiff indicates Naser made these unidentified statements at some point in 1999, but he does not otherwise indicate where these misrepresentations took place or how they were communicated to Plaintiff.

In addition to Plaintiff's common law fraud claim, Defendants argue Rule 9(b)'s heightened pleading standard applies to the entirety of Plaintiff's complaint. Plaintiff alleges throughout the complaint that Defendants engaged in fraudulent conduct, and Plaintiff's remaining claims are entirely dependent on these averments of fraud. For example, Plaintiff's quiet title claim in Count I alleges Naser "knowingly made a false statement to Plaintiff in having him sign the first page of the Quit Claim Deed" and Plaintiff relied on the false statement in signing the deed, "believing that it only gave permission for Naser to manage the building." (*Id.* ¶¶ 30–31; *see also id.* ¶ 18 (alleging Plaintiff signed the document because "according to Naser" it would "permit Naser to manage the building and act on his behalf, as the Landlord"); *id.* ¶ 33 ("As a result of Plaintiff's reliance on Defendant's false representation, he lost ownership to the real property.").) Likewise, Plaintiffs' claims for an accounting in Counts II and III are reliant on allegations of fraudulent conduct. (*Id.* ¶ 38 ("Given

the 1999 false and fraudulent conduct of Defendant Naser, the income and expenses he reported for the building are not truthful."); *id.* ¶ 39 (alleging that if Plaintiff is not allowed to own part of the Medical Center, "then this would constitute further fraud by Naser and an accounting will still be needed"); *id.* ¶ 45 ("Given the 1999 false and fraudulent conduct of Defendant Naser, and Naser's recent 2018 allegation that he purchased [Open MRI] in 2005, the income and expenses he reported . . . are not truthful.").)

Rule 9(b)'s heightened pleading standard "applies to all 'averments of fraud,' . . . regardless of whether those averments pertain to a 'cause of action' for fraud." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1039 (N.D. Ill. 2007) (collecting cases); *see also Pirelli*, 631 F.3d at 446 (stating "the dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud"); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that "sounds in fraud"—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements.") Allegations of fraud that fail to satisfy Rule 9(b) must be stricken from the complaint. *Siegel*, 480 F. Supp. 2d at 1039. Like Plaintiff's common law fraud claim, his allegations of fraudulent conduct forming the foundation of his claims to quiet title and an accounting are not pled with the requisite specificity. Plaintiff does not indicate when or where Naser's allegedly false statements were made, how they were communicated, or what was said to Plaintiff. *See id.* at 1043 (striking allegations of fraud that only provided a "faint sketch of fraud" in that they did not allege the "who," the "when," the "where," or the "how" of the alleged conduct). Because each of Plaintiff's claims "sounds in fraud," Plaintiff's failure to allege the circumstances constituting fraud with the particularity required by Rule 9(b) dooms his complaint. *Borsellino*, 477 F.3d at 507. Accordingly, we grant Defendants' motion to dismiss

all of Plaintiff's claims for failure to plead the circumstances constituting fraud with particularity pursuant to Rule 9(b).[2]

## II. QUIET TITLE CLAIM (COUNT I)

In addition to the complaint's pleading deficiencies, Defendants have lodged a number of challenges to the merits of Plaintiff's claims. Defendants first argue Plaintiff's claim to quiet title must be dismissed for failure to state a claim under Rule 12(b)(6) because Plaintiff's complaint makes clear he does not own the property in question after conveying it to Naser via quitclaim deed in 1999. (Mem. at 4.) Defendants argue that as a matter of law, Plaintiff cannot seek to quiet title for property he does not own. (*Id.*) In response, Plaintiff contends he does have title to the property because the quitclaim deed is "false and fraudulent." (Resp. (Dkt. No. 76) at 10.)

An action to quiet title "is an equitable proceeding wherein a party seeks to settle a dispute over ownership of property or to remove a cloud upon his title to the property." *Lakeview Tr. & Sav. Bank v. Estrada*, 134 Ill. App. 3d 792, 811, 480 N.E.2d 1312, 1327 (1st Dist. 1985); *accord Gambino v. Boulevard Mortg. Corp.*, 398 Ill. App. 3d 21, 52, 922 N.E.2d 380, 410 (1st Dist. 2009). "A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *Gambino*, 398 Ill. App. 3d at 52, 922 N.E.2d at 410. In an action to quiet title, the plaintiff must recover on the strength of his own title. *Id.* "[W]here a plaintiff has no title in himself, he cannot claim that there is a cloud upon title." *Estrada*, 134 Ill. App. 3d at 812, 480 N.E.2d at 1327; *accord Gambino*, 398 Ill. Ap. 3d at 52,

---

[2] Because we dismiss Plaintiff's common law fraud claim (Count IV) pursuant to Rule 9(b), we decline to consider Defendant's additional argument that the claim is barred by the statute of limitations.

9

922 N.E.2d at 410. Thus, a "*prima facie* case to quiet title requires that the party bringing the action must (1) possess good or true title to the property and (2) that title, whether legal or equitable, must be superior to other claimants." *Antoniou v. Heartland Bank & Tr. Co.*, 2015 IL App (1st) 150015–U, ¶ 18 (citing *Dudley v. Neteler,* 392 Ill. App. 3d 140, 143, 924 N.E.2d 1023, 1026 (4th Dist. 2009)).

Defendants argue Plaintiff has pled himself out of court because the quitclaim deed Plaintiff executed in 1999 deprived him of title, and as a result, he cannot now assert a quiet title claim. (Mem. at 4.) Indeed, Plaintiff's complaint concedes that he signed the quitclaim deed and transferred ownership of the property to Naser. (2d Am. Compl. ¶¶ 3, 18–20, 30–31, 50–51, 54; *see also id.* ¶¶ 33, 55 (alleging he "lost ownership to the real property").) Plaintiff also asserts Naser subsequently transferred the property into a trust held by North Star Trust Company. (*Id.* ¶ 27.) While Plaintiff alleges he did not understand what he was signing and therefore never intended to transfer ownership to Naser, the "grantor's intent is to be construed from the four corners of the deed." *Mann v. Mann*, 283 Ill. App. 3d 915, 918, 671 N.E.2d 73, 76 (3d Dist. 1996); *see also Villeneauve Dev. Co. v. Ill. Cent. Coll.*, 2012 IL App (3d) 110285U, ¶ 33 ("As with any other contract, the terms of the deed must be given their ordinary and natural meaning when they are clear and unambiguous. If the language of the deed is clear, a court must give effect to its plain and ordinary meaning without resort to any extrinsic evidence."); *Schwarm v. Mexia Holdings, L.P.*, 308 Ill. App. 3d 587, 591, 720 N.E.2d 330, 332–33 (5th Dist. 1999) ("Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without the consideration of extrinsic factors."); *In re Blair*, 330 B.R. 206, 212 (Bankr. N.D. Ill. 2005) (rejecting party's argument that they did not intend to transfer an equitable interest in property where the deed they

executed "unambiguously reflected a different intent" on its face). Here, the 1999 quitclaim deed unambiguously states Plaintiff agrees to "convey and quit claim to Naser Rustom" the property, and that he "hereby release[es] and waiv[es] all rights" to it. (*See* 1999 Quitclaim Deed.)

Moreover, we observe Plaintiff fails to allege that he currently has possession of the property, in which case, he has no standing to bring a quiet title action. *Dodge v. Nieman*, 150 Ill. App. 3d 857, 860, 502 N.E.2d 393, 395 (Ill. 1986) (explaining "where a party other than the plaintiff is in possession of the real estate, the plaintiff has an adequate remedy at law either by way of a forcible entry and detainer suit or an action in ejectment" (internal citations omitted)); *Chi. Title Land Tr. Co. v. Iverson*, 2016 IL App (1st) 150986-U, ¶¶ 16–21 (finding motion to dismiss quiet title action was properly granted where the plaintiff failed to allege it was in actual possession of the subject property); *see also O'Callaghan v. United States*, No. 09 C 7318, 2011 WL 1113365, at *5 (N.D. Ill. Mar. 22, 2011) (collecting cases concluding that "[i]n addition to having title, a plaintiff who brings a claim to quiet title must also have possession of the property at the time the suit is filed"). To the contrary, Plaintiff alleges Naser "is the named owner of the subject real property and has possession of the subject assets." (2d Am. Compl. ¶ 9.)

Notwithstanding the unambiguous terms of the quitclaim deed and Plaintiff's lack of possession, he now argues that the quitclaim deed is "fake and invalid" and therefore the "only true title of ownership" is the deed he signed to purchase the property in September 1995. (*See* Resp. at 10; 2d Am. Compl. ¶¶ 13–14, 18; *see also* 1995 Deed.) He contends the 1999 quitclaim deed is a "fake document" because "it does not have Maher's signature on the third page and the notary stamp on the second page does did [sic] not notarize Maher's signature

11

on the first page." (Resp. at 10.) Under Illinois law, "[v]arious forms of documents which appeared valid on their face have been held to constitute clouds on title." *Estrada*, 134 Ill. App. 3d at 812, 480 N.E.2d at 1327. To constitute a cloud on Plaintiff's 1995 title, Plaintiff must allege sufficient facts to support a finding that Defendants' interest in the property is "unfounded" or "inequitable to enforce" because the 1999 quitclaim deed is invalid. *Arriaga v. Wells Fargo Bank, N.A.*, No. 09 C 2115, 2011 WL 4738522, at *11 (N.D. Ill. Sept. 30, 2011). To be valid, a deed must "specify the estate being conveyed, be in writing, and be signed by the grantor, who may not be under duress, a minor, or of unsound mind" and it must be "delivered to, and accepted by, the grantee." *City of Virginia v. Mitchell*, 2013 IL App (4th) 120629, ¶ 29, 991 N.E.2d 936, 942 (citing *Gallagher v. Girote*, 23 Ill. 2d 170, 174, 177 N.E.2d 103, 106 (Ill. 1961)). "A deed meeting these minimum requirements is not void and will effectively pass title." *Id.*

As a threshold matter, the complaint here does not allege the quitclaim deed is "fake" or "invalid." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."). Instead, it only alleges Plaintiff did not understand what he was signing and that he relied on Naser's alleged "false statement" when signing the deed. (Reply at 3; *see also, e.g.*, 2d Am. Compl. ¶ 18 (alleging Plaintiff "signed a one-page document that he believed, according to Naser, would permit Naser to manage the building and act on his behalf, as the Landlord"); *id.* ¶ 19 (alleging Plaintiff did not speak or write English well and "completely depended and trusted . . . Naser with all the investments he made in the United States"); *id.* ¶¶ 31–32 (alleging Naser "knowingly made a false statement to Plaintiff in having him sign the first page of the Quit

Claim Deed," leading Plaintiff to believe it "only gave permission for Naser to manage the building," and Plaintiff never intended to transfer ownership to Naser).

Generally, "a deed duly executed and delivered cannot be impeached by the subsequent declarations of the grantor." *Finney v. White*, 389 Ill. 374, 378, 59 N.E.2d 859, 861 (Ill. 1945) (rejecting grantors' arguments that a deed was invalid because they were fraudulently induced to sign a quitclaim deed and did not understand they were conveying their interest in real estate where they were told "their signature would apply only to the personal property of the estate and the management of the same"); *see also Pfaff v. Petrie*, 396 Ill. 44, 52, 71 N.E.2d 345, 349 (Ill. 1947) (denying grantor's claim that a quitclaim deed was invalid and fraudulently executed because she was unable to read the document due to her poor eyesight and nobody informed her that it was a quitclaim deed). This is particularly true here, where the language of the deed is plain and unambiguous. *Finney*, 389 Ill. at 380–81, 59 N.E.2d at 862; *see also Access2go, Inc. v. Hipage Co.*, No. 08-1166, 2010 WL 55907, at *1 (C.D. Ill. Jan. 4, 2010) ("The reliance by the party misled must be reasonable, and reliance has generally been held to be unreasonable where the party has a chance to read the contract, and the contract plainly contradicts the allegedly false representation."). Thus, Plaintiff's "professions of ignorance of the nature and effect" of the deed are unavailing and insufficient to establish the invalidity of the quitclaim deed. *Spina v. Spina*, 372 Ill. 50, 58, 22 N.E.2d 678, 690–91 (Ill. 1939) (dismissing argument of party to a contract who alleged he could not read and write English).

Moreover, Plaintiff's contention that the notarized signatures are forged or inaccurate is inapposite because a deed need not be acknowledged for it to pass title. *Mitchell*, 2013 IL App (4th) 120629, ¶ 27, 991 N.E.2d at 941; *Zilvitis v. Szczudlo*, 409 Ill. 252, 258, 99 N.E.2d 124, 127 (Ill. 1951) ("[A]n acknowledgment is not necessary for the validity of a

13

deed, and it will properly pass title without being acknowledged. Acknowledgment goes only to the proof, which permits the deed being offered in evidence without further showing as to its genuineness."). Likewise, Plaintiff's allegation that "no consideration was ever transferred" is irrelevant to Plaintiff's invalidity argument. (2d Am. Compl. ¶¶ 4, 24.) Even if, contrary to the face of the deed, no consideration was transferred, it would not invalidate the deed. *See City of Virginia*, 2013 IL App (4th) 120629, ¶ 34, 991 N.E.2d at 943 ("Finally, we find the fact that [the grantee] paid no consideration to be irrelevant to the question of whether the deed was void."); *Matanic v. Krajach,* 392 Ill. 547, 554, 64 N.E.2d 885, 889 (Ill. 1946) (explaining the "owner of property may sell it for very little or give it away for nothing, if he desires, and the conveyance cannot afterward be set aside upon the ground, alone, of inadequacy or want of consideration," even where the deed's stated consideration was a "fictitious figure").

Finally, Plaintiff's argument that the quitclaim deed is invalid because it is fraudulent cannot sustain his claim either. "To establish fraud, a plaintiff must prove (1) a false statement or omission of a material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party resulting in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Lindy Lu LLC v. Ill. Cent. R. Co.*, 2013 IL App (3d) 120337, ¶ 26, 984 N.E.2d 1171, 1176–77 (citing *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (Ill. 1989)). "[F]raud does not exist where the parties have equal knowledge or the means to obtain equal knowledge" and a party "may not enter a transaction with his eyes closed to available information and then charge that he has been deceived by another." *Id.* For the reasons stated above, Plaintiff has failed to plead fraud with particularity, and his claim cannot therefore be sustained on his allegations of fraudulent conduct. *Siegel*, 480 F. Supp. 2d at 1041.

14

For all of the foregoing reasons, Plaintiff's claim to quiet title fails to state a claim upon which relief may be granted. Accordingly, Defendants' motion to dismiss under Rule 12(b)(6) is granted as to Count I.

## III. EQUITABLE ACCOUNTING (COUNTS II AND III)

We turn next to Plaintiff's claims that he is entitled to an accounting for the income and expenses of the property, the Medical Center, and Open MRI. In Count II, Plaintiff seeks an accounting of the income from 1999 to present for both the property and the Medical Center. (2d Am. Compl. ¶¶ 36–42.) Similarly, in Count III, Plaintiff seeks an accounting of the income and expenses of Open MRI from 2002 to the present. (*Id.* ¶¶ 43–47.) Defendants argue Counts II and III should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to allege the elements of an accounting claim. (Mem. at 5–6.) Defendants also argue Counts II and III should be dismissed because Plaintiff has no standing to bring his accounting claims as he has no ownership interest in the property, the Medical Center, nor Open MRI. (*Id.* at 6–9.) In support of this argument, Defendants submit evidence pursuant to Rule 12(d) that they argue "conclusively establishes" Plaintiff's claim cannot be sustained. (*Id.* at 3, 7 n.2, 9 n.5.)

### A. Sufficiency of the Pleadings

"To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law." *Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann v. Kemper Fin. Cos.*, 247 Ill. App. 3d 966, 980, 618 N.E.2d 317, 327 (1st Dist. 1992)). In addition, the plaintiff must allege at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature. *Id.*

Plaintiff's complaint fails to allege a plausible basis for finding a lack of an adequate remedy at law. Plaintiff alleges in conclusory fashion that "[t]here is no adequate remedy at law to determine the damages from the lost income that the business previously generated because it would be too difficult and too speculative." (2d Am. Compl. ¶¶ 40, 46.) Plaintiff's threadbare allegations merely recite one of the elements of his claim and are supported by conclusory statements. *See Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013). Nor has Plaintiff alleged any one of the other elements required to state an accounting claim. He bases the accounting claims on the "1999 false and fraudulent conduct of Defendant Naser," claiming that due to Naser's conduct, the income and expenses he reported for the building and the businesses are not truthful. (2d Am. Compl. ¶¶ 38, 45.)[3] However, for the same reasons set forth above, Plaintiff has failed to adequately support his fraud allegations, and therefore, his accounting claims cannot be sustained. *Kempner*, 428 F.3d at 715.

### B. Plaintiff's Ownership Interest in the Property and the Businesses

Defendants also argue Plaintiff's accounting claims fail because he cannot prove he has any ownership interest in the property, in the Medical Center, or in Open MRI. (Mem. at 6–9.) As to the property, for the reasons set forth above, Plaintiff has failed to plausibly allege he has title to the property, and the documents attached to the complaint establish he transferred

---

[3] In his response to the motion to dismiss, Plaintiff argues (1) there was a fiduciary relationship between Plaintiff and Naser; (2) there is a need for discovery to determine whether the money Plaintiff received "over the years was the correct amount, given that Naser has not considered Maher as having any ownership interest in the subject building and the companies in question"; and (3) the accounts for the building and the businesses are complex accounts that will require a forensic accounting because they are "mutual accounts where some of the money belong [sic] to Naser to manage the property and his 2/3 ownership of the medical center, as well as for his salary in the MRI company." (Resp. at 11.) None of these bases for requiring an accounting are alleged in the complaint and we therefore do not address them. *Thomason*, 888 F.2d at 1205.

ownership to Naser in 1999. Therefore, we grant Defendants' motion to dismiss Plaintiff's accounting claim in Count II for this additional reason.

With respect to Plaintiff's allegations that he owns Open MRI and has a one-third ownership stake in the Medical Center, Defendants argue the allegations are "demonstrably false." (Mem. at 6–9.) Defendants attach records they claim prove Plaintiff has never been an owner of the Medical Center and that demonstrate Naser has owned Open MRI as its sole owner and shareholder since exercising his option to buy out its shares in August 4, 2005. (*Id.*) To this end, Defendants seek entry of summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Concerning the Medical Center, Defendants submitted Naser's declaration, which states he has been the sole owner, shareholder, and director of the Medical Center since December 22, 1994. (Naser Decl. (Dkt. No. 72–1) ¶¶ 3–8, 25–26.) Defendants also attached documents maintained by the Illinois Secretary of State and kept in the ordinary course of business indicating Naser is the sole owner and officer of the Medical Center and owns 100 percent of its shares. (*Id.*, Exs. 1–3.) As to Open MRI, Defendants likewise rely on Naser's declaration, which states Naser purchased Open MRI from Plaintiff on August 4, 2005 after exercising an option to acquire all of the company's stock from Plaintiff in exchange for $10,000 cash. (*Id.* ¶¶ 10, 18–26, Exs. 6–8.) Defendants' evidence shows Naser is the current owner and sole shareholder of Open MRI, and that Plaintiff has had no ownership interest in Open MRI since August 2005. (*Id.*)

Defendants also argue Plaintiff is prohibited from owning any part of either the Medical Center or Open MRI because both businesses are medical services corporations[4] and Plaintiff is not a physician licensed to practice in Illinois. (Mem. at 7–10.) Under Illinois law, "[a]ll of the officers, directors and shareholders of a corporation subject to [the Medical Corporation Act] shall at all times be persons licensed pursuant to the Medical Practice Act of 1987" and "[n]o person who is not so licensed shall have any part in the ownership, management, or control of such corporation, nor may any proxy to vote any shares of such corporation be given to a person who is not so licensed." 805 Ill. Comp. Stat. Ann. 15/13(a). The Medical Practice Act of 1987 prohibits physicians from practicing medicine without a valid, active license in Illinois. 225 ILCS 60/3. Defendants submitted evidence establishing Plaintiff has never been licensed as a physician in Illinois, and therefore, he cannot have an ownership interest in the businesses. *See Carter-Shields, M.D. v. Alton Health Inst.*, 201 Ill. 2d 441, 462, 777 N.E.2d 948, 959 (Ill. 2002).

Despite having notice of Defendants' evidence and intent to move for summary judgment under Rule 12(d) as to Plaintiffs' accounting claims, Plaintiff submitted no evidence or argument in response. Instead, Plaintiff makes a nonsensical assertion that whether he can have any ownership interest in the Medical Center "is irrelevant because it is not an issue." (Resp. at 11.) Plaintiff claims he is only seeking "either the equitable value of 1/3 of the medical center or the rent payments from 1995 for the medical center." (*Id.*) However, as Defendants point out, that is not the relief Plaintiff seeks in the complaint. (*See* Reply at 10.) Plaintiff's complaint requests an accounting for all income and expenses for the building's rent and the income for the Medical Center from 1999 to present. (2d Am. Compl. ¶ 41.) Since Defendants have submitted

---

[4] Defendants submitted undisputed evidence showing Open MRI has been a medical services corporation since 2005. (*See* Naser Rustom Decl. ¶¶ 20–21, Ex. 7.)

uncontroverted evidence that Plaintiff does not own the Medical Center nor Open MRI, he is not entitled to an accounting, and therefore, Plaintiff's claims fail.

Because there is no dispute of material fact that Plaintiff is not currently an owner of the Medical Center or Open MRI, and he is barred from owning any stake in the businesses as he is not licensed to practice medicine in Illinois, summary judgment is granted pursuant to Federal Rules of Civil Procedure 12(d) and 56(a) in Defendants' favor as to Plaintiff's accounting claims for the Medical Center and Open MRI asserted in Counts II and III. In addition, we dismiss Plaintiff's accounting claim in Count II as to the property pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) as to Counts I and IV and as to Count II as it pertains to an accounting of the property. At this stage, the dismissal is without prejudice. Plaintiff may file an amended complaint within 14 days of the issuance of this opinion, to the extent he can do so consistent with the requirements of Rules 8 and 11. Defendants' motion for summary judgment on Counts II and III as to the Medical Center and Open MRI is granted pursuant to Rules 12(d) and 56(a) and these claims are dismissed. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: August 21, 2018
       Chicago, Illinois