IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAHER RUSTOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 C 9061 |
| ) | Hon. Marvin E. Aspen |
| NASER RUSTOM and NORTH STAR ) | |
| TRUST COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Maher Rustom's third amended complaint asserts claims for fraud, conversion, partition, and unjust enrichment against his brother, Defendant Naser Rustom. (3d Am. Compl. (Dkt. No. 93).) Defendant moves to dismiss. (Mot. (Dkt. No. 98) at 1.) For the reasons set forth below, we dismiss all counts with prejudice.

**BACKGROUND**

For purposes of a motion to dismiss, we accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). The present dispute concerns ownership of a commercial property and two businesses. (3d Am. Compl. ¶¶ 1–2.) Plaintiff resides in and practices medicine in Saudi Arabia, occasionally visiting the United States. (*Id.* ¶¶ 4, 9.) He was not educated in the United States and "does not speak or write English well." (*Id.* ¶ 1.) Defendant, also a doctor, is a citizen of Illinois and fluent in English. (*Id.* ¶¶ 1, 5.) Plaintiff claims he is the "owner of the . . . assets and real property" that are the subject of this action and that Defendant unlawfully possesses those properties. (*Id.* ¶¶ 4–5.)

### A. The Property at 4941 N. Kedzie, Chicago, Illinois

On September 26, 1995, Plaintiff bought a commercial building ("the Property") at 4941 North Kedzie in Chicago, Illinois, which he allowed Defendant to manage while Plaintiff lived in Saudi Arabia. (*Id.* ¶ 7.) Plaintiff alleges that during one of his visits to the United States in 1999, Defendant told him to sign a quitclaim deed that would allow Defendant to manage the Property "without problems from local government officials" in Plaintiff's absence. (*Id.* ¶ 9.) Plaintiff signed the quitclaim deed with no knowledge the document would transfer ownership to Defendant; he only intended for Defendant "to continue to manage the building and act on [Plaintiff's] behalf as the owner." (*Id.*) Plaintiff asserts "he lost title of ownership to the real property" in reliance on Defendant's representation of the deed's purpose. (*Id.* ¶ 33.)

### B. The Medical Center

Plaintiff purchased the Property in 1995 to provide a building in which the Galilee Medical Center, S.C. ("the Medical Center") would operate. (*Id.* ¶ 7.) Plaintiff alleges that he, Defendant, and their brother Amer Rustom created the Medical Center in 1994 with the understanding they were to each have a one-third ownership interest in the company. (*Id.* ¶ 8.) Plaintiff claims that Defendant misrepresented Plaintiff's ownership interest in the Medical Center because Defendant knew that only Illinois-licensed doctors could own medical centers under Illinois law. (*Id.* ¶¶ 7, 37.) Specifically, Defendant (1) made untruthful statements in 1994 and 1995 to Plaintiff about his ownership of the Medical Center and (2) presented Plaintiff with a fake document titled "trust" in 2003 showing each of the brothers as "1/3 beneficiaries to the Medical Center." (*Id.* ¶ 37.) Because Plaintiff believed Defendant's representations, he allowed Defendant to use the Property for the Medical Center rent-free. (*Id.* ¶ 39.)

### C. Open MRI

Plaintiff alleges he has owned all the shares of another company, Preferred Open MRI Ltd. ("Open MRI"), since 2002, and that he fired Defendant from his positions as Open MRI's president, secretary, and treasurer on March 1, 2018. (*Id.* ¶ 12.) He claims that "[w]ithout Maher's knowledge or authorization, Naser merged [Open MRI] with a medical center" on an unspecified date to prevent Plaintiff from owning the resultant entity, as Defendant knew Plaintiff could not own a medical services corporation under Illinois law. (*Id.* ¶ 13.) He also alleges Defendant used false and fraudulent documents in attempting to prove Defendant purchased Open MRI. (*Id.* ¶¶ 14, 18.) Although Plaintiff contends he "has always been the owner of [Open MRI]," he simultaneously states that he wishes to "restore his ownership interest in the MRI company." (*Id.* ¶¶ 13, 15.) Finally, Plaintiff alleges Defendant knowingly misrepresented the income and expenses of Open MRI, and that Defendant's false statements and fake accounting documents led Plaintiff to receive an inadequate profit from the business. (*Id.* ¶ 42.)

### D. Plaintiff's Claims

Plaintiff filed his third amended complaint on September 3, 2018. Count I asserts that Defendant fraudulently induced Plaintiff to sign the 1999 quitclaim deed, (*id.* ¶¶ 27–35), while Count II claims Defendant fraudulently induced Plaintiff to allow the Medical Center to operate rent-free in the Property, (*id.* ¶¶ 36–40). Count III states Defendant committed common law fraud pertaining to the Property, the Medical Center, and Open MRI. (*Id.* ¶¶ 41–44.) Count IV alleges that Defendant wrongfully converted Open MRI. (*Id.* at ¶¶ 45–50.) Count V seeks a partition of Open MRI. (*Id.* at ¶¶ 51–56.) Count VI pleads unjust enrichment in the alternative. (*Id.* at ¶¶ 57–63.)

**STANDARD OF REVIEW**

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assocs., Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not a "probability requirement," but it asks for "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the plaintiff need not plead "detailed factual allegations," he must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. At the motion to dismiss stage, we accept all well-pleaded factual allegations in the complaint as true and draw all inferences in the Plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

When a complaint pleads fraud or mistake, Rule 9(b) requires the circumstances constituting fraud or mistake to be stated with particularity. Fed. R. Civ. P. 9(b); *see DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). To establish the "circumstances constituting fraud," the complaint must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators &*

4

*Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted). In other words, the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

## ANALYSIS

Defendant moves to dismiss all claims in Plaintiff's third amended complaint. (Mot.) Defendant argues that Plaintiff does not adequately allege all the elements of fraud as they pertain to the Property and the Medical Center. (Mot. ¶ 6.) Defendant argues that the law of the case doctrine forecloses Maher's claims of conversion and partition, (Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. No. 100) at 11–12), and contends Plaintiff's common law fraud claim fails to plead fraud with particularity under Federal Rule 9(b). (Mot. ¶ 7.) Finally, Defendant argues that Plaintiff's unjust enrichment claim must fail because his underlying fraud claims are deficient. (Mem. at 13.) We address each issue in turn.

### I. FRAUD CLAIMS CONCERNING THE PROPERTY

Counts I and III allege Defendant committed fraud with respect to the Property by inducing Plaintiff to sign a quitclaim deed, making false statements, and showing Plaintiff false documents concerning the Property's income and expenses. (3d Am. Compl. ¶¶ 29, 42.) Defendant moves to dismiss these claims for failure to plead that Plaintiff justifiably relied on Defendant's alleged misrepresentations. (Mem. at 5–7.) Plaintiff responds that Defendant did not "point out which elements are allegedly missing" from these claims. (Resp. (Dkt. No. 104) at 11.)

To state a claim for fraud in Illinois, a claimant must show "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce

5

the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Board of Educ. of City of Chi. v. A, C and S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (Ill. 1989). The claimant's reliance on the false statement must be justified. *Siegel Dev., LLC v. Peak Const. LLC*, 2013 IL App (1st) 111973, ¶ 114, 993 N.E.2d 1041, 1060 (1st Dist. 2013); *Vill. of Palatine v. Palatine Assoc.*, LLC, 2012 IL App (1st) 102707, ¶ 80, 966 N.E.2d 1174, 1196 (1st Dist. 2012). Determining whether reliance was justified requires consideration of all the surrounding circumstances, including the facts known by the claimant at the time of the misrepresentation, as well as those the claimant could have discovered by exercising ordinary prudence. *D.S.A. Fin. Corp. v. Cty. of Cook*, 801 Ill. App. 3d 554, 560, 801 N.E.2d 1075, 1081 (1st Dist. 2003); *Kinsey v. Scott*, 124 Ill. App. 3d 584, 590, 463 N.E.2d 1359, 1365 (2d Dist. 1984). When a claimant "'has ample opportunity to ascertain the truth of the representations before he acts,' such as in a contract case where the false representations are undercut by the contract itself," reliance will not be justified. *SMS Assist LLC v. E. Coast Lot & Pavement Maint. Corp.*, 913 F. Supp. 2d 612, 627 (N.D. Ill. 2012) (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 882 (7th Cir. 2005)). A claimant's reliance may be justified when the "falsity of the representation was unknowable" by the relying party. *Id.*

   Plaintiff alleges that Defendant told him the 1999 deed would allow Defendant to manage the Property "without problems" from local officials, and that Plaintiff relied on this representation when signing the deed, not understanding that the deed would transfer title to his brother. (3d Am. Compl. ¶¶ 29–30.) However, a party may not "enter into a transaction with eyes closed to material facts and then claim fraud by deceit." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 651, 762 N.E.2d 1, 9 (1st Dist. 2001). We have previously stated that

6

the language of the 1999 deed is unambiguous. (Mem. Op. (Dkt. No. 92) at 11.) The deed's clear language suggests its legal effect was knowable to Plaintiff. *See SMS Assist LLC*, 913 F. Supp. 2d at 627.

Accepting as true that Plaintiff could not personally understand the 1999 deed because of his limited ability to speak English, (3d Am. Compl. ¶¶ 1, 9, 30), Plaintiff fails to allege that he justifiably relied on Defendant's representation of the deed's legal effect. One's inability to ascertain the meaning of a document—whether through illiteracy, unfamiliarity with terminology, or inability to understand the language used—does not foreclose the contract's enforcement. "[I]t is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them," and ultimately, "a party who agrees to terms in writing without understanding or investigating those terms does so at his own peril." *Paper Exp., Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir. 1992); *see also Spina v. Spina*, 372 Ill. 50, 58, 22 N.E.2d 687, 691 (Ill. 1939) ("[O]ne who is unable to read is not permitted to make contracts without the usual precaution to ascertain what they mean.").

Plaintiff's alleged inability to understand English does not exempt him from the binding effect of a document he signed. *Mizyed v. Palos Cmty. Hosp.*, 2016 IL App (1st) 142790, ¶¶ 54–55, 58 N.E.3d 102, 115 (1st Dist. 2016). While Plaintiff alleges that "[h]ad a notary public been present, he might have explained to Maher what he was signing, but Naser did not let that happen," Plaintiff simultaneously alleges that he agreed to sign the deed without any such person present. (3d Am. Compl. ¶ 9.) Plaintiff does not allege that he sought out a translation prior to signing or that he was prevented by Defendant from doing so; therefore, Plaintiff's alleged reliance was not justified. *See First Mercury Ins. Co. v. Ciolino*, 2018 IL App (1st)

7

171532, ¶ 41, 107 N.E.3d 240, 251 (1st Dist. 2018) (finding plaintiff was bound to a contract where he did not allege he was denied the chance to review the terms beforehand).

Furthermore, exhibits in Plaintiff's complaint undercut his alleged inability to understand the language of the 1999 deed. District courts may consider facts in a complaint that undermine the claim at issue in deciding a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). When an exhibit conflicts with the allegations in the complaint, the exhibit generally controls. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007); *Bland D. v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 983 (N.D. Ill. 2019). Plaintiff alleges he does not speak English well and would require a translator to give testimony, implying he could not understand the deed's language and therefore had to rely on Defendant's representations. (3d Am. Compl. ¶¶ 1, 9, 30.) However, an email written by Plaintiff in English and attached to Plaintiff's third amended complaint undercuts that assertion. (Pl.'s Ex. F (Dkt. No. 93–5).) The contradictory facts set forth in Plaintiff's complaint, along with the absence of any explanation as to the discrepancy between his alleged language abilities and the attached email, provide additional grounds to dismiss the fraud claims pertaining to the Property. *See Bogie*, 705 F.3d at 609 (stating that when a plaintiff's case relies on contradicting an attachment to his or her complaint, the plaintiff must explain the contradiction).

Moreover, the 1999 deed was not the only time Plaintiff entered a property transaction in the United States. Plaintiff purchased the Property himself four years prior, in 1995. (3d Am. Compl. ¶ 7.) Quitclaim deeds were employed to transfer the Property in both the 1995 and 1999 conveyances, and "Quitclaim" is typed clearly at the top of each deed. (Pl.'s Exs. A and B (Dkt. Nos. 93–1 & 93–2).) Plaintiff cannot select which dealing he would like to be valid by affirming one transaction and claiming ignorance of the same type of

8

transaction four years later. *See Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1058 (7th Cir. 1988) (quoting *Luciani v. Bestor*, 106 Ill. App. 3d 878, 884, 436 N.E.2d 251, 256 (3d Dist. 1982)) (a court will consider a party's prior business experience when evaluating assertions of justifiable reliance); *see also Schmidt v. Landfield*, 20 Ill. 2d 89, 94–95, 169 N.E.2d 229, 232 (Ill. 1960) (plaintiffs who previously dealt with the same real estate were "charged with knowledge of the state of the title to the real estate" and "were not justified in relying on any statement defendant might have made" pertaining to it). Plaintiff's previous experience with the type of conveyance at issue, apparent from the 1995 deed attached to and referenced in Plaintiff's complaint, (3d Am. Compl. ¶ 7; Pl.'s Ex. A), contradicts his contention that he justifiably relied on Defendant's representations of the 1999 deed's purpose, and supports dismissal of this fraud claim.

For all these reasons, Count I and Count III as it pertains to the Property are dismissed.

## II. FRAUD CLAIMS CONCERNING THE MEDICAL CENTER

Plaintiff also claims Defendant committed fraud by misrepresenting that Plaintiff had a one-third ownership interest in the Medical Center, (3d Am. Compl. ¶¶ 36–40 (Count II)), and by misrepresenting the Medical Center's profits to which Plaintiff was entitled, (*id.* ¶¶ 41–44 (Count III)). Specifically, Plaintiff alleges that Defendant falsely told him that he owned one-third of the Medical Center, and showed him a false document titled "trust" that listed Plaintiff as a beneficiary of the Medical Center, despite Defendant's knowledge that Illinois law prevented Plaintiff from owning a medical services corporation in Illinois. (*Id.* ¶¶ 7, 37.) Defendant argues that Plaintiff was not justified in relying on the alleged misrepresentations because they were statements of law, not fact, and one cannot justifiably rely on a statement of law. (Mem. at 8; Reply (Dkt. No. 106) at 5.)

9

Under Illinois law, "[a]ll of the officers, directors and shareholders of a corporation subject to [the Medical Corporation Act] shall at all times be persons licensed pursuant to the Medical Practice Act of 1987," and "[n]o person who is not so licensed shall have any part in the ownership, management, or control of such corporation." 805 ILCS 15/13(a). The Medical Practice Act of 1987 prohibits physicians from practicing medicine without a valid, active license in Illinois. 225 ILCS 60/3. Plaintiff has never been licensed as a physician in Illinois, and as we previously concluded, Plaintiff "cannot have an ownership interest" in the Medical Center. (Mem. Op. at 18.)

Generally, "one is not entitled to rely upon a representation of law because both parties are presumed to be equally capable of knowing and interpreting the law." *Kupper v. Powers*, 2017 IL App (3d) 160141, ¶ 28, 71 N.E.3d 347, 354–55 (3d Dist. 2017) (quoting *Stichauf v. Cermak Rd. Realty*, 236 Ill. App. 3d 557, 567, 603 N.E.2d 828, 834 (1st Dist. 1992)); *see also In re Marriage of Lipkin*, 208 Ill. App. 3d 214, 218, 566 N.E.2d 972, 975 (4th Dist. 1991). A determination of whether a false statement is one of law or fact "has evolved beyond a strict fact versus law dichotomy," turning instead on "'whether a defendant's misrepresentations or omissions were discoverable through the exercise of ordinary prudence by the plaintiff.'" *Kupper*, 2017 IL App (3d) 160141 at ¶ 28, 71 N.E.3d at 354 (quoting *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 807, 612 N.E.2d 984, 988 (2d Dist. 1993)). For instance, misrepresentations implicating existing zoning regulations are misrepresentations of law, given that zoning regulations are readily available in the public record and may be discovered through ordinary prudence by the party to whom a misrepresentation concerning zoning was made. *City of Aurora v. Green*, 126 Ill. App. 3d 684, 689, 465 N.E.2d 610, 614 (2d Dist. 1984); *Hamming v. Murphy*, 83 Ill. App. 3d 1130, 1135,

10

404 N.E.2d 1026, 1030 (2d Dist. 1980). On the other hand, mixed statements of law and fact may be actionable in fraud if the defendant's statements are really misstatements of fact that underlie legal conclusions, which the plaintiff cannot easily verify. *Gavery v. Altheimer & Gray*, No. 95 C 2747, 1996 WL 521400, at *6 (N.D. Ill. Sept. 11, 1996) (discussing *Peterson v. Yacktman*, 25 Ill. App. 2d 208, 166 N.E.2d 452 (1st Dist. 1960), and *Kinsey v. Scott*, 124 Ill. App. 3d 329, 463 N.E.2d 1359 (2d Dist. 1984)).

Defendant's alleged misrepresentations concerning ownership of the Medical Center are dependent on Illinois law. As Illinois law dictates ownership of medical services corporations in Illinois, and the law is equally available to both parties, Plaintiff was not justified in relying on Defendant's misrepresentation regarding Plaintiff's part-ownership of the Medical Center. *See Kupper*, 2017 IL App (3d) 160141-U at ¶ 28, 71 N.E.3d at 354–55; *Lipkin*, 208 Ill. App. 3d at 218–19, 566 N.E.2d at 975 (since federal law dictates revocability of survivor benefit plans, a party cannot justifiably rely on another's misrepresentation that a survivor benefit plan is irrevocable); *City of Aurora*, 126 Ill. App. 3d at 688, 467 N.E.2d at 613 (purchasers of property in violation of zoning regulations could not justifiably rely on representations concerning zoning, as the relevant zoning information was available to them in a zoning map and at city hall); *Hamming*, 83 Ill. App. 3d at 1135, 404 N.E.2d at 1030 (plaintiff could not justifiably rely on misrepresentations concerning zoning because zoning ordinances and procedures are "a matter of public record available to both parties").

Even if Defendant's representations could be considered mixed statements of law and fact, Plaintiff's claims concerning the Medical Center cannot survive. A mixed statement of law and fact may be actionable where a defendant has "superior knowledge as to the specific facts to which the relevant law was being applied." *Gavery*, 1996 WL 521400, at *6; *see, e.g., Kinsey*,

124 Ill. App. 3d at 339, 463 N.E.2d at 1366 (defendant's statement that a rezoned five-unit apartment building complied with all applicable building codes was one of fact because the defendant "was vouching for the proper construction of all five units"); *Peterson*, 25 Ill. App. 2d at 214–15, 166 N.E.2d at 455–56 (defendant's statement that he "operated a water utility under Illinois law" conveyed the underlying factual understanding that the defendant had done all that was needed to operate a water utility in compliance with Illinois law). Here, Defendant and Plaintiff both possessed equal knowledge of the key fact (that Plaintiff was not an Illinois-licensed physician) to which the relevant law (the Medical Corporation Act and Medical Practice Act of 1987) was being applied. Plaintiff could easily have verified his inability to legally own part of a medical center in Illinois with the exercise of ordinary prudence. As his third amended complaint avers, he did not do so.

Accordingly, we dismiss Count II of Plaintiff's complaint, alleging fraudulent inducement in allowing Defendant to operate the Medical Center rent-free from the Property. And as Plaintiff did not (and could not) own any part of the Medical Center, we dismiss Count III insofar as Plaintiff claims he received an inadequate share of the Medical Center's profits.

### III.     CONVERSION AND PARTITION CLAIMS

In Counts IV and V, Plaintiff claims conversion and partition, respectively, of Open MRI. (3d Am. Compl. ¶¶ 45–50, 51–56.) Defendant argues Counts IV and V should be dismissed pursuant to the law of the case doctrine, because claims for conversion and partition require an ownership interest and we have previously held that Plaintiff does not have an interest in Open MRI. (Mem. at 9–12; *see* Mem. Op. at 17–19 (concluding on summary judgment that Plaintiff has not owned any part of Open MRI since at least August 4, 2005).) In response, Plaintiff does not contend he presently owns Open MRI, but rather asks the Court to "determine[] that Naser

12

merged or 'amended' the MRI company owned by Maher," which he claims will provide "a factual basis to partition the two companies" and allow Plaintiff to own the "original MRI company." (Resp. at 14.)

To state a claim for conversion under Illinois law, one must allege "(1) unauthorized and wrongful control, dominion, or ownership by defendant over plaintiff's property; (2) plaintiff's right in the property; (3) plaintiff's absolute and unconditional right to the immediate possession of the property; and (4) a demand for possession of the property." *G.M. Sign, Inc. v. Stergo*, 681 F. Supp. 2d 929, 931 (N.D. Ill. 2009). Similarly, a partition claim requires that a claimant have an interest in the entity to be partitioned. *Anderson v. Anderson*, 42 Ill. App. 3d 781, 782, 356 N.E.2d 788, 789–90 (1st Dist. 1976) (observing "[t]he object of partition is to enable those who own property . . . to sever their interests"); *Davis v. Davis*, 128 Ill. App. 2d 427, 430, 262 N.E.2d 788, 790 (1st Dist. 1970).

The law of the case doctrine is based on the policy that "when an issue is once litigated and decided, that should be the end of the matter." *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972). "The doctrine reflects the idea that a single court should not revisit its earlier rulings unless there is a compelling reason to do so. It is designed to further consistency, to avoid constantly revisiting rulings, and to conserve judicial resources." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009).

Here, we have already held on summary judgment that "there is no dispute of material fact that Plaintiff is not currently an owner of . . . Open MRI, and he is barred from owning any stake in the businesses as he is not licensed to practice medicine in Illinois." (Mem. Op. at 19.) We find no compelling reason to revisit this decision. Both conversion and partition require the claimant to have a right to the property at issue, *Anderson*, 42 Ill. App. 3d at 782, 356 N.E.2d at

13

789–90; *Davis*, 128 Ill. App. 2d at 430, 262 N.E.2d at 790, and we have previously held Plaintiff does not and cannot own Open MRI. *See Sharp*, 578 F.3d at 510; *see also Barrett*, 457 F.2d at 123. Accordingly, we dismiss Counts IV and V of Plaintiff's third amended complaint.

## IV. COMMON LAW FRAUD CLAIM

We now address any residual claim that may remain in Count III, alleging common law fraud against Defendant. Plaintiff alleges, "From 1995 to 2017, Defendant Naser continued to knowingly make false statements and presented fake accounting documents to Maher concerning the income and expenses for the subject building, the Medical Center and the MRI company." (3d Am. Compl. ¶ 42.) Specifically, Plaintiff alleges that between 1995 and 2002, Defendant stated that there were no profits to share with Plaintiff, and thereafter Plaintiff received $1,600 per month from Defendant between 2002 and 2014 and $2,000 per month from 2014 through 2017. (*Id.*) Plaintiff claims that he suffered damage in reliance on the false earnings statements by receiving less in profits from the businesses than he was owed and by allowing his brother to use the Property rent-free. (*Id.* ¶ 43.)

We have already dismissed Count III as it pertains to Plaintiff's ownership of the Property after he signed the 1999 quitclaim deed, so he has no viable claim about allowing Defendant to use the Property "rent-free" after that time. (*See id.* ¶ 43.) No claim for Medical Center profits can be allowed because Plaintiff has never been a legal owner of that business. (*See* Mem. Op. at 17–19.) We also previously determined that Plaintiff has not owned any part of Open MRI since at least August 4, 2005, and that he is barred from owning Open MRI under the same strictures that make his ownership of the Medical Center illegal. (*See id.*)

14

To the degree any part of Count III remains viable, Defendant argues that Plaintiff again fails to plead fraud with the particularity required by Rule 9(b). (Mem. at 15; Reply at 15.) We agree. Plaintiff does not allege when or where Defendant made the statements or presented the fake accounting documents, and fails to identify any specific instances of fraudulent conduct. Instead, he alleges generally that fraud occurred over a span of years. Count III thus does not plead fraud with particularity under Rule 9(b). *See Pirelli*, 631 F.3d at 441–42 (7th Cir. 2011).

Plaintiff has had multiple chances to properly plead his common law fraud claim. We previously dismissed his second amended complaint for failure to plead fraud with particularity. (Mem. Op. at 8–9.) Plaintiff has not cured this deficiency in Count III of his third amended complaint. Although "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint before the entire action is dismissed," *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015), "repeated failure to cure deficiencies by amendments previously allowed" provides reason to disallow additional opportunities to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). We therefore dismiss Count III with prejudice.

V.      UNJUST ENRICHMENT CLAIM

Plaintiff's final claim, in Count VI, is for unjust enrichment. (3d Am. Compl. ¶¶ 57–62.) Unjust enrichment does not justify recovery as a standalone cause of action. *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (3d Dist. 2009); *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631, 888 N.E.2d 1190, 1200 (1st Dist. 2008). Rather, to survive a motion to dismiss, an unjust enrichment claim requires a valid underlying claim, such as fraud. *Martis*, 388 Ill. App. 3d at 1024–25, 905 N.E.2d at 928; *Mulligan*,

15

382 Ill. App. 3d at 631, 888 N.E.2d at 1200. Because we have already held that Plaintiff has alleged no basis for a finding of fraud, Count VI is dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, we grant Defendant Naser Rustom's motion to dismiss Plaintiff Maher Rustom's third amended complaint in its entirety, with prejudice.[1]

It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 27, 2019
        Chicago, Illinois

---

[1] Plaintiff also names North Star Trust Company ("North Star") as a defendant in this matter. (3d Am. Compl. ¶ 6.) The only factual allegation in the entire complaint related to this defendant asserts that Naser Rustom transferred ownership of the Property to North Star and that North Star currently holds the Property in trust. (*Id.* ¶¶ 6, 11.) North Star, for its part, denies that it holds the Property at all. (Answer (Dkt. No. 127) ¶ 6.) As all claims against Naser Rustom are dismissed with prejudice, and Plaintiff does not allege any wrongdoing on the part of North Star, we likewise dismiss this case against North Star for failure to state a claim.